UNITED STATES of America,
Plaintiff-Appellee,

v.

Ramon Dionico MARTINEZ,
Defendant-Appellant.

UNITED STATES of America,
Plaintiff-Appellee,

v.

Homar Martinez PERALEZ,
Defendant-Appellant.

Nos. 74–3611, 75–2047
Summary Calendar.*

United States Court of Appeals,
Fifth Circuit

Feb. 4, 1976.

L. Aron Pena, Edinburg, Tex., for defendant-appellant in No. 74–3611.

Anthony J. P. Farris, U. S. Atty., James R. Gough, Asst. U. S. Atty., Houston, Tex., for plaintiff-appellee in No. 74–3611.

Roberto J. Yzaguirre, McAllen, Tex., for defendant-appellant in No. 75–2047.

Edward B. McDonough, Jr., U. S. Atty., James R. Gough, Jr., Mary L. Sinderson, Asst. U. S. Attys., Houston, Tex., for plaintiff-appellee in No. 75–2047.

ON PETITIONS FOR REHEARING
and PETITIONS FOR REHEARING
EN BANC

Before GEWIN, GOLDBERG and DYER, Circuit Judges.

DYER, Circuit Judge:

Relying on *United States v. Ortiz,* 1975, 422 U.S. 891, 95 S.Ct. 2585, 45 L.Ed.2d 623, and *United States v. Brignoni-Ponce,* 1975, 422 U.S. 973, 95 S.Ct. 2574, 45 L.Ed.2d 607, the convictions in these cases were reversed.[1]

Upon the government's petition for rehearing en banc the Court was polled at the request of one of the members of the Court and a majority of the Circuit Judges who are in regular active service voted to deny it. Since a dissent has been filed from the Court's refusal to rehear en banc the panel's determination in each case it is appropriate to amplify our previous decisions.

On October 11, 1973, United States Border Patrol agents stopped Martinez at a traffic checkpoint near La Gloria, Texas. While inquiring about Martinez' citizenship they noticed a large metal

---

* Rule 18, 5th Cir.  See *Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al.,* 5th Cir. 1970, 431 F.2d 409, Part I.

1.  Unpublished opinions, dated August 8, 1975 [see table 5 Cir., 517 F.2d 1402].

box in the back of the pickup truck. Martinez was required to open the box although there was nothing to give rise to probable cause. Marijuana was found in the box. After his motion to suppress was denied he was convicted of possession with intent to distribute. On June 30, 1975, the Supreme Court in *Ortiz* held that probable cause or consent is required for vehicular searches at "traffic checkpoints removed from the border and its functional equivalents." We applied *Ortiz* to *Martinez* and reversed the conviction.[2]

Here then we have a search post *Almeida-Sanchez* and pre-*Ortiz*. The government argues that the extension of the rule announced in *Almeida-Sanchez*, applied to checkpoint searches for the first time in *Ortiz*, should not be given retrospective application. We disagree. *Ortiz* did not establish a new rule in an overruling decision. See *United States v. Peltier*, 1975, 422 U.S. 531, 95 S.Ct. 2313, 45 L.Ed.2d 374; *United States v. Miller*, 5 Cir. 1974, 492 F.2d 37, 40. On the contrary the Court took pains to point out that it was following *Chambers v. Maroney*, 1970, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419, and *Almeida-Sanchez*.

". . . A search, even of an automobile, is a substantial invasion of privacy. To protect that privacy from official arbitrariness, the Court always has regarded probable cause as the minimum requirement for a lawful search. *Almeida-Sanchez*, 413 U.S. 266, at 269–270, 93 S.Ct. [2535], at 2537–2538, 37 L.Ed.2d 596; *Chambers v. Maroney*, 399 U.S. 42, 51, 90 S.Ct. 1975, 1981, 26 L.Ed.2d 419 (1970). We are not persuaded that the differences between roving patrols and traffic checkpoints justify dispensing in this case with the safeguards we required in *Almeida-Sanchez*. We therefore follow that decision and hold that at traffic checkpoints removed from the border and its functional equivalents, officers may not search private vehicles without consent or probable cause.

We have had presented to us relatively few cases where the search was made at a checkpoint without probable cause between the time of *Almeida-Sanchez*, decided June 21, 1973, and the time of *Ortiz*, decided June 30, 1975. Thus there is no major law enforcement problem and such cases will not be recurring.

With respect to *Peralez*, on October 8, 1974, Border Patrol agents received a signal from the chekar device on Highway 1017 South of Hebbronville, Texas. The agents drove to that highway and saw a vehicle stop at a stop sign where 1017 intersects Highway 285. The two occupants of the car turned out the lights, alighted and relieved themselves, got back into the car, turned the lights on and turned east on 285 toward Fulfurrias. The officers stopped the vehicle and while questioning Peralez detected the odor of marijuana. Peralez was ordered to open the trunk and marijuana was discovered. Subsequently his motion to suppress was denied and he was convicted of possession with intent to distribute.

Hebbronville, by way of Laredo to the border is 55 miles, and by way of Zapata is 50 miles. Highway 1017 does not lead to the border. It begins approximately 30 miles north of the border at Highway 281. Highways 186, 281, 681, 2844, 2294, 755 and 2686 all intersect 1017. The officers had no previous information that Peralez was approaching from the south on 1017—they simply received a signal of an approaching car. They had no reason to believe that the vehicle had come from the border, or that Peralez was violating any law. There were no suspicious circumstances to justify stopping the car.

The government contends that where a roving patrol is involved, as here, *Almeida-Sanchez* is inapposite because it

---

**2.** The Supreme Court declined to decide the retroactivity question in *Ortiz* because it had not been raised below.

held only that a search could not be conducted without probable cause, but did not touch upon a *stop* for investigation without cause or suspicion; and that *Brignoni-Ponce*, which held that a *stop* could only be justified upon the basis of reasonable suspicion should not be retrospectively applied to *Peralez.*

We are unwilling to accept the fine distinction drawn by the government between stops and searches in a roving patrol case. *Brignoni-Ponce* did not establish a new rule in an overruling decision, *Miller, supra,* or a new constitutional principle, *Peltier, supra.* As this Court succinctly stated in the *United States v. Soria,* 5 Cir. 1975, 519 F.2d 1060, 1062, "*Ortiz* and *Brignoni-Ponce* established standards of conduct for Border Patrol agents after the date of decision in *Almeida-Sanchez v. United States,* 413 U.S. 266, 93 S.Ct. 2535, 37 L.Ed.2d 596 (1973)."

The Court therefore adheres to the panel decisions and the petitions for rehearing en banc in *United States v. Martinez* and *United States v. Peralez* are severally denied.

Before BROWN, Chief Judge, and WISDOM, GEWIN, BELL, THRONBERRY, COLEMAN, GOLDBERG, AINSWORTH, GODBOLD, DYER, MORGAN, CLARK, RONEY and GEE, Circuit Judges.

RONEY, Circuit Judge, with whom, BROWN, Chief Judge, AINSWORTH, CLARK and GEE, Circuit Judges, join, dissenting:

I respectfully dissent from the Court's refusal to rehear en banc the panel's determination that *United States v. Ortiz,* 422 U.S. 891 at 896–97, 95 S.Ct. 2585 at 2588–89, 45 L.Ed.2d 623 (1975), and *United States v. Brignoni-Ponce,* 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975), should be applied retroactively to searches occurring prior to the date of those decisions, insofar as the exclusionary rule of evidence is concerned.

In *Almeida-Sanchez v. United States,* 413 U.S. 266, 93 S.Ct. 2535, 37 L.Ed.2d 596 (1973), the Supreme Court held that a *search* could not lawfully be conducted by officers engaged in a roving patrol without probable cause or consent. That case did not, however, establish the circumstances under which a search at a permanent checkpoint could be made or the circumstances under which a stop could be made by a roving patrol for purposes of interrogation. These questions were not finally answered until *Ortiz* and *Brignoni-Ponce* were decided two years later.

In *Ortiz* the Supreme Court held that border patrol officers at fixed checkpoints, other than at the border or its functional equivalent, cannot search a vehicle in the absence of consent or probable cause. In *Brignoni-Ponce* the Supreme Court held that a stop of a vehicle by a roving patrol for purposes of *interrogation,* as distinguished from a search, could only be justified upon the basis of reasonable suspicion capable of being articulated.

The question of whether rulings in criminal cases should be given retroactive effect is one that has repeatedly troubled both the Supreme Court and this Court. Recently, in *United States v. Peltier,* 422 U.S. 531, 95 S.Ct. 2313, 45 L.Ed.2d 374 (1975), the Supreme Court refused to apply *Almeida-Sanchez* to searches conducted prior to the date of that decision. *Peltier* establishes the guidelines by which we should evaluate the retroactivity *vel non* of *Ortiz* and *Brignoni-Ponce,* insofar as they trigger the exclusionary rule.

In *Peltier,* as in these cases, the Government contended "that the exclusionary rule should not be . . . applied . . . because the policies underlying the rule did not justify its retroactive application . . . ." *United States v. Peltier,* 422 U.S. at 534, 95 S.Ct. at 2316, 45 L.Ed.2d at 379. In agreeing with the Government, the Supreme Court noted

that in every case in which the Court has addressed the retroactivity problem in the context of the exclusionary

rule, whereby concededly relevant evidence is excluded in order to enforce a constitutional guarantee that does not relate to the integrity of the fact finding process, the Court has concluded that any such new constitutional principle would be accorded only prospective application. *Linkletter v. Walker,* 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965); *Johnson v. New Jersey,* 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966); *Stovall v. Denno,* [388 U.S. 293 [87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967)]; *Fuller v. Alaska,* 393 U.S. 80, 89 S.Ct. 61, 21 L.Ed.2d 212] (1968); *Desist v. United States,* 394 U.S. 244, 89 S.Ct. 1030, 22 L.Ed.2d 248 (1969); *Jenkins v. Delaware,* 395 U.S. 213, 89 S.Ct. 1677, 23 L.Ed.2d 253 (1969); *Williams v. United States,* [401 U.S. 646, 91 S.Ct. 1148, 28 L.Ed.2d 388 (1971)]; *Hill v. California,* 401 U.S. 797, 91 S.Ct. 1106, 28 L.Ed.2d 484 (1971).

We think that these cases tell us a great deal about the nature of the exclusionary rule, as well as something about the nature of retroactivity analysis.

\*    \*    \*    \*    \*    \*

The teaching of these retroactivity cases is that if the law enforcement officers reasonably believed in good faith that evidence they had seized was admissible at trial, the "imperative of judicial integrity" is not offended by the introduction into evidence of that material even if decisions subsequent to the search or seizure have broadened the exclusionary rule to encompass evidence seized in that manner. It would seem to follow *a fortiori* . . . that the "imperative of judicial integrity" is also not offended if law enforcement officials reasonably believed in good faith that their *conduct* was in accordance with the law even if decisions subsequent to the search or seizure have held that conduct of the type engaged in by the law enforcement officials is not permitted by the Constitution.

\*    \*    \*    \*    \*    \*

This approach to the "imperative of judicial integrity" does not differ markedly from the analysis the Court has utilized in determining whether the deterrence rationale undergirding the exclusionary rule would be furthered by retroactive application of new constitutional doctrines.

\*    \*    \*    \*    \*    \*

If the purpose of the exclusionary rule is to deter unlawful police conduct, then evidence obtained from a search should be suppressed only if it can be said that the law enforcement officer had knowledge, or may properly be charged with knowledge, that the search was unconstitutional under the Fourth Amendment (footnotes omitted).

*United States v. Peltier,* 422 U.S. at 535–538, 95 S.Ct. at 2316–2317, 45 L.Ed. 2d at 380–381.

I doubt it can be fairly said that, prior to *Ortiz,* border patrol officials had knowledge, or could properly be charged with knowledge, that probable cause was required for permanent checkpoint searches. *Almeida-Sanchez* certainly did not put them on notice of the unconstitutionality of these practices since it dealt only with roving patrol searches, a much clearer case of a constitutional violation in my opinion.

Illustrative of the uncertainty of the applicability of the principles laid down in *Almeida-Sanchez* to the permanent checkpoint situation is the fact that the two circuit courts which considered the question reached opposite conclusions. In *United States v. Bowen,* 500 F.2d 960 (9th Cir. 1974) (en banc), *aff'd on other grounds,* 422 U.S. 916, 95 S.Ct. 2569, 45 L.Ed.2d 641 (1975), the Ninth Circuit in a seven to six multiple opinion case held that *Almeida-Sanchez* required probable cause for all vehicle searches in the border area, whether conducted by roving patrols or at fixed traffic checkpoints. This Court, however, in *United States v. Hart,* 506 F.2d 887 (5th Cir.), *vacated and remanded,* 422 U.S. 1053, 95 S.Ct. 2674, 45 L.Ed.2d 706 (June 30, 1975) (for

reconsideration in light of *Ortiz* and *Brignoni-Ponce* ), held that, at least as to searches conducted at the permanent checkpoint involved in that case, the principles announced in *Almeida-Sanchez* did not require that border patrol officers have probable cause to support the vehicle searches. These two circuit court cases, differing in result and analysis, clearly support the argument that border patrol officials should not be charged with knowledge prior to *Ortiz* that probable cause was required to conduct permanent checkpoint searches. *Cf. Wood v. Strickland,* 420 U.S. 329, 95 S.Ct. 1003, 43 L.Ed.2d 214 (1975) (opinion of Powell, J.).

While the retroactivity of *Brignoni-Ponce* presents a closer question, since it deals with roving patrols as did *Almeida-Sanchez,* it seems to me that the Government should at least be afforded oral argument, and probably en banc consideration, on the retroactivity issue, in the exclusionary rule context, of this extension in the continually developing field of border search law. The real reason for the exclusionary rule is lost where good faith efforts of border patrol officers to protect the borders of this country are nullified because they did not properly guess how the courts would rule on the nuances of border search law. Courts should be mindful of the responsibility imposed on the border patrol in this very difficult area and should allow the officers the full reach of the law as it is at the time of enforcement activities, and not limit them by what the law may eventually be.

Both cases should be reheard by the Court en banc.

GEE, Circuit Judge (dissenting):

I respectfully dissent from the denial of en banc hearing in these matters. My reasons for doing so on the matter of retroactivity are well set out in Judge Roney's dissenting opinion.

I think as well that the validity of the Chekar-activated citizenship checks conducted at the La Gloria and Hebbronville checkpoints deserves careful considera-

tion. Had these checks been conducted at a permanent checkpoint, they would have been clearly permissible. *United States v. Santibanez,* 517 F.2d 922 (5th Cir. 1975). It seems to me that these Chekar stations equate to such a checkpoint; certainly, as the description of the Hebbronville installation in *United States v. Thompson,* 390 F.Supp. 337, 340 (S.D.Tex.1974) makes clear, they are a far cry from *Almeida-Sanchez'* roving patrol. Briefly, metal-sensing devices embedded in the several highways which converge on Hebbronville are activated during the hours of darkness. When a radio signal is received from one by the patrol on duty, it takes up an intercept position on the highway indicated. To the extent that these intercept positions are fixed, but opened only at need, they may analogize sufficiently to a permanent checkpoint to pass muster. Certainly the Chekars conserve scarce manpower along the lower border, recognized to be in a state of hemorrhage. In these circumstances, to dismiss their use (if we have) without so much as a suggestion as to how they might be properly employed seems to me rash.