UNITED STATES of America,
Plaintiff-Appellee,

v.

Robert Edward WOODARD and Ernest Lee Plymel, Jr., Defendants-Appellants.

No. 75-4270
Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

May 13, 1976.

Harvey S. Swickle, Miami Beach, Fla., for defendants-appellants.

Robert E. Hauberg, U. S. Atty., James B. Tucker, Asst. U. S. Atty., Jackson, Miss., for plaintiff-appellee.

Before BROWN, Chief Judge, GEWIN and MORGAN, Circuit Judges.

JOHN R. BROWN, Chief Judge:

Defendants appeal from their conviction of possession of marijuana with intent to distribute. 21 U.S.C.A. § 841(a)(1). We hold that the District Court erred in denying defendants' motion to suppress and therefore reverse.

A roving border patrol agent stopped Woodard and Plymel at approximately 1:30 a. m. on January 13, 1975, as they drove a pickup truck with a camper shell South on U.S. Hwy. 49 near the northern city limits of Gulfport, Mississippi. Hwy. 49 runs North-South from Arkansas through Jackson, Mississippi to Gulfport and in January 1975 was also the main route for East-West traffic on I-10. I-10 had not been completed through Mississippi and traffic traveling East on I-10 would turn South on Hwy. 49 to U.S. Hwy. 90, which then joined I-10 near the Mississippi-Alabama state line. Therefore, at this point, near Gulfport, Hwy. 49 was a major route for tourists traveling from the North on Hwy. 49 or from the West on I-10.

---

* Rule 18, 5 Cir.; see *Isbell Enterprises, Inc.* v. *Citizens Casualty Company of New York et al.,* 5 Cir., 1970, 431 F.2d 409, Part I.

On appeal both sides have relied on the facts as stated by INS border patrol agent Mandel who made the stop. For us the facts as he testified to them turn out to be the sole source.

Mandel was patrolling Hwy. 49 near Gulfport because it is part of a main route for smuggling aliens from the Texas-Mexican border to Florida. Mandel saw defendants' vehicle traveling South as he drove North on Hwy. 49. He turned and followed the truck for several blocks, during which time he observed that it was a large truck and camper with wide tires, a Florida license plate, and closed curtains on the rear door and side windows. He also saw two people in the cab "but I couldn't tell much about them." [Tr. at 6].

He pulled the truck over, went to the driver's side and inquired about the citizenship of the two occupants. Although both answered that they were American citizens, Agent Mandel requested that they open the back of the truck. After Woodard attempted unsuccessfully to open the camper door with a key, Mandel shined his flashlight through a space in the curtains. At this time he could see "plastic sacks or green plastic . . . covering burlap." [Tr. at 10]. He also attempted to look through a crack at the bottom of the camper door. Woodard eventually gave the agent another key which Mandel used to open the camper door. At that point he "smelled marijuana" and saw the green plastic sacks.[1]

The Supreme Court clearly set out the requirements for a warrantless stop by a roving border patrol agent in *United States v. Brignoni-Ponce*, 1975, 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607.

> Except at the border and its functional equivalents, officers on roving patrol may stop vehicles only if they are aware of specific articulable facts, together with rational inferences from those facts, that reasonably warrant suspicion that the vehicles contain aliens who may be illegally in the country.

422 U.S. at 884, 95 S.Ct. at 2582, 45 L.Ed.2d at 618.

This requirement of "articulable facts" which give reasonable suspicion has been applied retroactively by the Fifth Circuit. *United States v. Martinez*, 5 Cir., 1975, 526 F.2d 954, 956. Therefore, we must decide the validity of this stop by that standard.

The post-*Brignoni-Ponce* case law includes several cases in which the Court found that the agents had no reasonable suspicion to stop. *United States v. Partner*, 5 Cir., 1976, 527 F.2d 1337; *United States v. Peralez*, 5 Cir., 1976, 526 F.2d 954; *United States v. Del Bosque*, 5 Cir., 1975, 523 F.2d 1251; *United States v. Byrd*, 5 Cir., 1975, 520 F.2d 1101; *United States v. DeVita*, 9 Cir., 1975, 526 F.2d 81.

Being essentially a factual analysis, in other cases this Court on appeal has upheld the stop. *United States v. Canales*, 5 Cir., 1976, 527 F.2d 440; *United States v. Estrada*, 5 Cir., 1976, 526 F.2d 357; *United States v. Walker*, 5 Cir., 1975, 522 F.2d 194; *United States v. Lara*, 5 Cir., 1975, 517 F.2d 209; *see United States v. Nunn*, 5 Cir., 1976, 525 F.2d 958; *United States v. Moffett*, 5 Cir., 1975, 522 F.2d 1379.

The cases in which the stop was upheld are clearly distinguishable on their facts, both as to (i) the location of the stop, *Canales, supra* (near the Mexican border); *Estrada* and *Walker, supra* (near Hebbronville, Texas), and (ii) the circumstances, *Canales* and *Estrada, supra* (suspicious behavior of the occupants); *Nunn, supra* (informant's tip); *Walker, supra* (high speed chase of three vehicles); *Lara, supra* (camper riding low, traveling from the Rio Grande on a gravel road).

None of the factors that have been considered relevant in judging the validity of a stop by a roving patrol is present here. There was no informant's tip, no suspicious pre-stop behavior, no low-riding camper, and no proximity to the Texas-Mexican border.

---

1. The validity of this search depends on whether there was consent, as the agent clearly had no probable cause when he first requested Woodard to open the camper. As we find the stop invalid, however, we need not reach the issue of the search.

As the Court has pointed out in prior cases, a vital element of the test is whether the agent had "reason to believe that the vehicle had come from the border," *Martinez, supra* at 1648; *accord, Del Bosque, supra* at 1252. Here the Agent Mandel specifically testified that he did not know where the vehicle was coming from, knew nothing about the people in the truck, and at the time he stopped the vehicle had no facts which indicated that anyone in the truck had crossed the Mexican-American border or had been in contact with anyone who had.[2]

Clearly the agent did not have sufficient "specific articulable facts" to give him reason to suspect that this truck-camper was carrying aliens illegally in the United States. The Government's argument that the camper truck was geographically about 15–16 blocks from the Gulf Coast line of Mississippi while proceeding on a heavily traveled interstate highway system will not wash. The thousands of travelers and vehicles moving peaceably in law abiding pursuits for pleasure or business ought not to be stopped on the flimsy showing made here merely because the point of stoppage happens to be fairly close to what might be described as an international border. *See United States v. Brignoni-Ponce, supra,* 422 U.S. at 882–83, 95 S.Ct. at 2580–2581, 45 L.Ed.2d at 617–618.

2. Cross-examination of Agent Mandel:

Q. Agent Mandel, let me ask you this. You observed this vehicle traveling south, is that correct?
A. Yes sir.
Q. Do you know where that vehicle was coming from?
A. No.
Q. At that point, at the point that you turned around and stopped it or to go after it did you know where it had been coming from?
A. No sir.
Q. Do you have any facts about any of the individuals in the vehicle at that time?
A. No sir.
Q. At the time that you turned on your blue lights and stopped that vehicle did you have any facts in your possession other than the observation of the vehicle that would have indicated to you that that vehicle had crossed the border?
A. No sir.

The motion to suppress should have been granted and, therefore, the conviction falls.

REVERSED.

Q. Did you have any facts that would have indicated to you that the individuals in the vehicle had crossed any border?
A. No sir.
Q. At the time you turned on your blue lights and stopped this vehicle did you have any facts in your possession that would have indicated to you that either of the individuals, Mr. Plymel or Mr. Woodard had been in contact with anyone who had been at the border?
A. No facts, no sir.
Q. So that the court clearly understands we are not operating under the situation where there was any information or informants involved in this case whatsoever, is that correct?
A. That's correct.
R. at 128–30.