**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Robert Dale SHIELDS,
Defendant-Appellant.**

**No. 75–3193
Summary Calendar.***

United States Court of Appeals,
Fifth Circuit.

July 1, 1976.

---

* Rule 18, 5 Cir.; see *Isbell Enterprises, Inc. v. Citizens Casualty Company of New York, et al.,* 5 Cir., 1970, 431 F.2d 409, Part I.

Daniel V. Alfaro, Corpus Christi, Tex., for defendant-appellant.

Edward B. McDonough, Jr., U. S. Atty., Mary L. Sinderson, Asst. U. S. Atty., Houston, Tex., for plaintiff-appellee.

Before BROWN, Chief Judge, GODBOLD and GEE, Circuit Judges.

PER CURIAM:

This case arose outside of Hebbronville, Texas, in the early morning hours of January 30, 1975, when an imbedded "Chekar" device was tripped and at a highway intersection some 20 minutes later, the defendant, Robert Dale Shields, was stopped by monitoring Agents of the U.S. Border Patrol. It is the reasonableness of this stop and probable cause for the subsequent search and use of the fruits of that search after Shields' automobile had allegedly tripped the "Chekar", that are the primary questions on appeal. On the basis of the Trial Judge's denial of the Motion To Suppress and in light of the recent opinion by this Court in *United States v. Del Bosque*, 5 Cir., 1975, 523 F.2d 1251, which is also out of the Hebbronville area and squarely in point, we reverse.

Shields was charged with a violation of Title 21 U.S.C. § 841(a)(1), of possessing with intent to distribute a controlled substance, over 330 pounds of marijuana and later convicted upon trial by the Court and sentenced to a term of four years, a Special Parole Term and a $1,000 fine.

The Defendant did not testify in his trial below nor did he produce any witnesses to his defense but the Motion To Suppress, denied by the Trial Judge, was carried with the case.

The facts in this case begin to unfold when Border Patrol Agent, Stephen A. Peregoy, and his partner were manning the midnight shift on January 30, 1975. It was close to 2:00 a. m. when the Agents received the alerting signal as Defendant's car touched off the Chekar device, imbedded underneath highway FM 1017 on the right-hand lane as the road heads North.[1] This Chekar device, located under the highway

---

1. The Chekar is a device that acts as a large metal detector imbedded underground in the highways and when a large mass of metal or vehicle passes over it, it will send out a signal

to Hebbronville, a city about 70 miles from the Mexican border via the most direct route, monitored all traffic traveling over it and moving in a Northerly direction on Farm Road 1017. The Border Agents were monitoring the Chekar and conducting a mobile traffic check at the intersection of Farm Road 1017 and Highway 285, the intersection being some 12 miles from the actual point of the imbedded Chekar.[2] As Defendant's 1973 Pontiac Catalina approached the intersection—it being the car suspected of tripping the Chekar—the Border Agents followed Defendant Shields to within a mile of the city of Hebbronville and pulled him over for a "citizenship check."

After the Agents stopped him, Defendant Shields got out of his car and walked to the back of the car. As Agent Peregoy questioned him as to his citizenship, he detected the odor of marijuana coming from Shields himself. The Agent walked over to the driver's door and with the window partially down, smelled a strong odor of marijuana coming from the vehicle and requested

to the Agent's car radio. The Chekars have been used in this area for about five years and send out radio signals 24 hours a day but are only monitored at certain hours. One roving car monitors several Chekars because of lack of manpower. There are two other Chekars in the area and they each give off a different radio tone.

2.

Shields to open the trunk where he discovered the kilo bricks of marijuana partially covered with a blanket. Shields and the contraband were turned over to an Agent for the Drug Enforcement Administration and Shields was arrested and given his Miranda warnings. He then told the D.E.A. agents that he had been furnished the car and was paid $500 to deliver the marijuana to Houston.

The question narrows here as it did in the almost factually and geographically identical *United States v. Del Bosque*, 5 Cir., 1975, 523 F.2d 1251 case to whether there was reasonable suspicion to stop Defendant's car by "roving" Border Patrol Agents. In *Del Bosque* the Court stated in quoting *United States v. Brignoni-Ponce*, 1975, 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607, that the officers had no reasonable suspicion to stop appellant's car. The Court in *Brignoni-Ponce* discussing Fourth Amendment rights stated that it forbids stopping vehicles at random to inquire if they are carrying aliens who are illegally in the Country.

█ It also forbids stopping or detaining persons for questioning about their citizenship on less than a reasonable suspicion that they may be aliens. Except at the border and its functional equivalent, officers on roving patrol may stop vehicles only if they are aware of specific articulable facts, together with rational inferences from those facts, that reasonably warrant suspicion that the vehicles contain aliens who may be illegally in the Country. *See Almeida-Sanchez v. United States*, 1973, 413 U.S. 266, 93 S.Ct. 2535, 37 L.Ed.2d 596, and *United States v. Ortiz*, 1975, 422 U.S. 891, 95 S.Ct. 2585, 45 L.Ed.2d 623.

█ This requirement of "articulable facts" which give reasonable suspicion has been applied retroactively by this Court, and would be required in this case because this is a post-*Almeida-Sanchez*, pre-*Brignoni-Ponce* stop situation. *United States v. Martinez*, 5 Cir., 1975, 526 F.2d 954, 956. Therefore, we must decide the validity of this stop by that standard. *U. S. v. Woodard*, 5 Cir., 1976, 531 F.2d 741. *See U. S. v. Partner*, 5 Cir., 1976, 527 F.2d 1337; *U. S. v.*

*Estrada*, 5 Cir., 1976, 526 F.2d 357; *U. S. v. Walker*, 5 Cir., 1975, 522 F.2d 194.

█ The need for a remand for an evidentiary hearing in this case is obviated by the responses of the Border Patrol Agents in the Trial Court. The Agents stated they had been instructed by their supervisors and it was their "policy" to try and stop every car that tripped one of the Chekars (see note 1, *supra*). The Agents also testified that they, in fact, did not believe Shields' automobile had come from the border. A geographical survey of the lower Texas border reveals that Farm Road 1017 and Highway 285 intersect near Hebbronville over 65 miles from the Mexican border, and at least (5) roads empty into FM 1017 as it heads North to Hebbronville, see note 2, *supra*. There are also (10) nearby communities with thousands of law abiding citizens using these area highways for all sorts of business and pleasure, at all times of the day and night, and they ought not to be stopped by roving Border Patrol for "citizenship checks," without the "required articulable facts," merely because they happen to live fairly close to an International Border. *U. S. v. Woodard, supra; see United States v. Estrada, supra.*

We conclude after a review of the evidence that the stop of Shields' car simply because it crossed a "Chekar" near Hebbronville, falls below the standards of reasonable suspicion set by the Court for roving Border Patrol Officers in search of aliens miles from an International Border and we accordingly reverse.

REVERSED.