UNITED STATES of America,
Plaintiff-Appellant,

v.

Ricky Dale BALLARD, Janice Elaine Williams and Jose Ines Escalera,
Defendants-Appellees.

No. 78–3275.

United States Court of Appeals,
Fifth Circuit.

Aug. 13, 1979.

---

LeRoy Morgan Jahn, Asst. U. S. Atty., San Antonio, Tex., for plaintiff-appellant.

Herbert Cooper, Lucian B. Campbell, Federal Public Defender, El Paso, Tex., for Escalera.

Before TJOFLAT and VANCE, Circuit Judges, and ALLGOOD, District Judge.*

ALLGOOD, District Judge:

Appellees Ricky Dale Ballard, Janice Elaine Williams and Jose Ines Escalera, were charged in a one-count indictment alleging possession of 70 pounds of marijuana with intent to distribute in violation of 21 U.S.C. § 841(a)(1). Prior to trial, the District Court granted appellees' motion to suppress the 70 pounds of marijuana seized at the time of their arrest. The Government on appeal contends that the search which produced the marijuana qualified as an extended border search which required neither warrant nor probable cause; or, in the alternative, that as a roving patrol the customs officers knew articulable facts which justified their stopping the automobile and that these facts when coupled with their observation of the dress and demeanor of the passengers gave them a reasonable suspicion to search the vehicle. We agree that the facts available to the customs officers gave them reasonable suspicion to stop appellees' automobile, and that once detained, the condition of the occupants provided the officers with probable cause to search the car. We therefore find that the District Court was in error in granting the motion to suppress and reverse.

On the morning of July 29, 1978, Customs Patrol Officers Paul R. Neely and John C. Hollingsworth were conducting a "still watch" surveillance in the Big Bend National Park near the intersection of Park Route 9, a paved park access road, and the Santa Elena Crossing Road, a one mile long dirt road leading to the Rio Grande River. The officers had a clear view of the roads leading into the intersection and could see ¾ of a mile to the south on the Santa Elena Road, or to within ¼ of a mile of the Rio Grande River. There are no camping facilities or picnic areas off of the Santa Elena Road, although visitors to the park occasionally travel the road to the river for visits which average 15 to 30 minutes. At the end of the Santa Elena Road, there is neither a bridge nor a port of entry; however, residents of the small Mexican town of Santa Elena are able to ford the river on

* District Judge of the Northern District of Alabama, sitting by designation.

foot or in a pickup truck when the water is low, or to rent a small boat for the crossing at other times. On July 29, 1978, the river was low enough so that the crossing could be made on foot or by truck. Officer Neely knew that smuggling occurred frequently in the area, having been personally involved in seven such cases in one and one-half years.

At approximately 8:25 a. m., the officers noticed a maroon Mercury automobile traveling west on the park access road. A few minutes later, the automobile returned to the intersection of Route 9 and the Santa Elena Road, and headed south on the Santa Elena Road at a high rate of speed. The maroon automobile was not seen again until 10:00 a. m., at which time the officers spotted the car traveling north on the dirt road at the same high rate of speed; when the automobile reached the intersection, it turned east on the park road. During the hour and a half interim in which the car had been within the ¼ mile area near the river out of the sight of the officers, the officers had seen only one other vehicle which was traveling on Route 9 and none were seen on the Santa Elena Road. The officers pursued the maroon automobile, which was traveling at ten miles over the speed limit, and stopped it several miles from the intersection of Park Route 9 and the Santa Elena Road, a point approximately four miles from the border. When appellee Ballard, the driver, stepped out of the car in response to Officer Neely's request that he do so, the officers noted that he was not wearing a shirt and that his pants were wet and muddy. When appellee Escalera, who had been seated in the rear of the car stepped out, he too was wearing pants which were wet and muddy. An examination of the interior of the automobile revealed no contraband. Officer Neely then took the keys from the ignition, opened the trunk of the automobile, and upon doing so, smelled marijuana. The appellees were placed under arrest, and tests confirmed that 70 pounds of marijuana were contained in the trunk.

Appellees filed a motion to suppress in the District Court contending that the offi-

cers were operating as a "roving patrol" and as such did not comply with the search requirements set forth in *United States v. Brignoni-Ponce*, 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975). The District Court determined that the officers did not have the requisite reasonable suspicion at the time that they stopped the automobile, and therefore suppressed the evidence under *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

The District Court based its suppression of the marijuana on our ruling in *U. S. v. Resendez*, 578 F.2d 1041 (5th Cir. 1978). In that case the driver of a Cadillac was stopped and searched. The Cadillac speeded past officers while they searched a Mercury. There were no articulable facts known to the officers at the time of stopping the Cadillac which connected it to the Mercury other than the speed itself. There we held that the speed of the car, without more, does not establish reasonable suspicion. 578 F.2d at 1045. We noted that the facts in *Resendez* posed a particularly close question and that in other cases seemingly insignificant factors could tip the balance. 578 F.2d at 1045. Such factors are present here.

 Although Congress has granted customs officers broad authority to detain and search vehicles to prevent the importation of aliens and contraband into the United States [*See*, 19 U.S.C. §§ 482, 1581, 1582 (1976); *United States v. Rivera*, 595 F.2d 1095 (5th Cir. 1979)], there are limits placed on this authority by the Fourth Amendment. *See*, *United States v. Bowman*, 502 F.2d 1215 (5th Cir. 1974); *United States v. Brignoni-Ponce, supra*. In *Brignoni-Ponce*, the court relied on *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) and required that a roving border patrol "be able to point to specific and articulable facts which, taken together with rational inference from those facts, reasonably warrant" a belief that customs laws are being violated. *United States v. Brignoni-Ponce, supra*, 422 U.S. at 880, 95 S.Ct. 2574, 2580. Where a border patrol officer's observations

provide him with reasonable suspicion that a vehicle is involved in illegal border activities, he may detain the car briefly to question the occupants about the activities which aroused his suspicion. However, any further search or detention may only be conducted on the basis of consent or probable cause. *Id.*

■ Several factors may be considered in determining whether there is reasonable suspicion to detain an automobile near the border. The characteristics of the area in which the vehicle is traveling, the proximity of the vehicle to the border, the usual patterns of traffic in the area, and previous experience with customs violations in the area may justify the officer's conclusion that customs laws are being violated. *Id.*, at 884, 95 S.Ct. 2574. Customs officers are entitled to consider the totality of the circumstances in light of their previous experience. *United States v. Rivera, supra.*

■ In previous decisions this Court has stressed that a critical element of the *Brignoni-Ponce* test is whether the agents had "reason to believe that the vehicle [in question] had come from the border." *See U. S. v. Woodard*, 531 F.2d 741, 743 (5th Cir. 1976). That vital element was missing in cases where the stop occurred seventy miles from the border, *U. S. v. Escamilla*, 560 F.2d 1229, 1230 (5th Cir. 1977); sixty miles from the border, *U. S. v. Del Bosque*, 523 F.2d 1251 (5th Cir. 1975); fifty miles from the border, *U. S. v. Martinez*, 526 F.2d 954, 955 (5th Cir. 1976); and fifteen to sixteen blocks from the Mississippi Coast line, *U. S. v. Woodard*, 531 F.2d 741 (5th Cir. 1976). Under the facts of this case we find that there was reason to believe the maroon Mercury had come from the border. The officers observed it travel to within ¼ of a mile of the border, observed it speeding on a dirt road, observed that it stayed in the border vicinity for an unusually long time on a very hot day and observed that the Rio Grande River was low enough that it could be crossed by foot.

The appellees' automobile was traveling a dirt road which led to the Rio Grande River where there was neither a port of entry, a bridge, nor picnic or camping facilities. Although over 300,000 tourists visit the park annually, the Santa Elena Crossing Road is not often travelled, and the tourists which occasionally take the road remain an average of 15 to 30 minutes. Customs violations were known to occur in the area, and in the year and a half previous to July 29, 1978, Officer Neely had been involved in approximately seven marijuana smuggling cases arising out of the Santa Elena Crossing area. Based on their previous experience with customs violations in the Santa Elena Crossing area, the reasonable belief that the vehicle had come from the border, and the suspicious activities of the maroon automobile, the officers had reasonable suspicion to detain the vehicle to question its occupants as to the nature of their activities.

■ Once the officers had detained the appellees' automobile, either consent or probable cause to believe that the vehicle contained contraband were required to bring the search within the bounds of the Fourth Amendment. *See, United States v. Brignoni-Ponce, supra.* It is settled that a search of an automobile may be made without a warrant where the seizing officer has probable cause to search and the mobility of the vehicle creates exigent circumstances. *Carroll v. United States*, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925); *Chambers v. Maroney*, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); *United States v. Nieto*, 510 F.2d 1118 (5th Cir. 1975). Probable cause to search exists when the facts and circumstances available to the officers warrant a reasonably prudent man to believe that the vehicle contains contraband. *United States v. Clark*, 559 F.2d 420 (5th Cir. 1977); *United States v. Nieto, supra.* In determining whether there is probable cause to believe that a vehicle contains contraband, the officers are entitled to rely on their training and experience in assessing the totality of the circumstances and the inferences which flow from those circumstances. *United States v. Clark, supra*, at 424.

**1120**

In the instant case, the condition of the occupants of the maroon automobile, together with the circumstances under which the automobile had been detained, provided the officers with probable cause to believe that the vehicle contained contraband. As previously noted, two of the three occupants of the vehicle were wearing wet and muddy clothing. It is undisputed that the level of the river was such that it could be forded on foot. Further, the actions of the automobile's occupants were atypical of the tourists who visited the area. The absence of any tourist facilities on either the United States or Mexican sides of the border, together with the 100° heat on that day, as well as the speed of the vehicle in entering and leaving the Santa Elena Crossing area, created reasonable suspicion in the minds of the customs officers as to the occupants' activities during the one and a half hours they were in the river area. These circumstances, when assessed in light of the officers' experience in regulating border activities, and their previous experience with smuggling in the Santa Elena area, provided them with probable cause to believe that the vehicle contained contraband. Moreover, in view of the mobility of the vehicle, the potential for flight, and the possible subsequent destruction of evidence, there were sufficient exigent circumstances which together with the probable cause to believe a crime had been committed justified the warrantless search of the automobile. *United States v. Troise*, 483 F.2d 615 (5th Cir. 1973).

Therefore, the search of appellees' automobile was within the confines of the Fourth Amendment, and the appellees' motion to suppress the 70 pounds of marijuana seized in the search of the automobile should not have been granted. Accordingly, we reverse.

REVERSED.