**UNITED STATES of America,**

v.

**John D. THOMAS; Dennis Albert Rollins; and Junior N. Enfinger, Defendants.**

Cr. No. 82–12–S.

United States District Court,
M. D. Alabama, S. D.

April 16, 1982.

John C. Bell, III, U. S. Atty., Charles R. Niven, Asst. U. S. Atty., Montgomery, Ala., for plaintiff.

J. R. Herring, Dothan, Ala., for defendant Enfinger.

George Beck, Montgomery, Ala., for defendant Rollins.

C. Delaine Mountain, Tuscaloosa, Ala., for defendant Thomas.

## MEMORANDUM OPINION

HOBBS, District Judge.

This case is now before the Court on the motions of defendants Rollins and Thomas to suppress as evidence all property seized in the search of a Piper Warrior airplane, Tail No. 3036T, on January 26, 1982; the motion of defendant Enfinger to suppress as evidence all property seized in the search of a 1975 Ford LTD automobile on January 26, 1982, and motions by Thomas and Rollins for severance of the trial in this case. A hearing on the specified motions was held March 31, 1982 and briefs were filed by April 13, 1982. Having reviewed the record, the briefs, and the case law in the area of Fourth Amendment search and seizure requirements, the Court is of the opinion that the three motions to suppress are due to be denied. The Court also concludes that the rights of the separate defendants can be adequately safeguarded at trial by proper instructions, and, therefore, the motions to sever will be denied. The motions to dismiss the indictment filed by defendants Thomas and Rollins will be denied.

## FACTS

On January 26, 1982, at approximately 1:00 p. m., Lt. Bradford of the Alabama Department of Public Safety, Bureau of Investigation, Narcotics Department, received a call from an unnamed law enforcement officer who related the information that an airplane, a blue and white Piper Warrior, Tail No. 3036T, was on the ground in Panama City, Florida and was expected to fly to Dothan or some other point in Alabama that afternoon. Flying in the

plane would probably be two occupants, one of whom was named Thomas. (There is some confusion in the testimony as to whether the police were informed that the other suspect was named Dennis Rollins.) The plane would have on board about one pound of cocaine. The unnamed officer gave the source of his information as being an informant who had given reliable information in the past.

At about 2:00 p. m. Lt. Bradford then called Officer Rhegness in Montgomery, relayed the informant's tip, and dispatched Officer Rhegness by plane to Panama City to establish surveillance. Officer Rhegness, with accompanying officers Hatfield and Conrad, found the described plane on the ground in Panama City and unoccupied.

Approximately 4:30 p. m. Corporal Hatfield saw two subjects exit a late model Chevy Malibu automobile with an Alabama tag and board the plane, carrying a small brown satchel-type case and a brown paper bag. Corporal Hatfield had the tag number of the car and passed that information to Lt. Bradford in order to try to identify the owner. The officers took off after the observed plane left the ground.

The Piper Warrior first headed north, then turned east, and finally went to a lower altitude and proceeded north again. Officer Rhegness testified that the final heading would take the plane straight to Napier Field, which served Dothan but was located in Dale County, Alabama. According to Rhegness, the plane's flight pattern was evasive in that it failed to hold a straight course or a steady altitude.

While the two planes were flying toward Dothan, Lt. Bradford was notifying the Dothan and Houston County authorities. Officer White of the Dothan Police Department was given the tag number of the Chevy Malibu to determine its registration. The car was registered to All-American Car Rentals which had sold it several months before to J. C. Elmore of Elmore's Car Sales in Dothan. Officer White had been involved in previous narcotic investigations in which J. C. Elmore, Jr. was a suspect and knew that J. C. Elmore, Jr. was a convicted marijuana trafficker.

Lt. Bradford also requested Officer White to set up ground surveillance at Napier Field. Three cars proceeded to the airport. One car contained Officer White and Agent David Dukes of the ABI; the second car held Sgt. Sorrells of the Dothan police, Officer Saloom of the Alabama Department of Forensic Sciences, and Leroy Wood of the Houston County Sheriff's office; and the third car held Roger Jones of the ABC Board and Joe Watson. The cars were in place when the planes arrived, and the cars and ABI plane were in radio contact with each other.

The Piper Warrior landed and taxied to a stop about fifty yards from where Officer White and Agent Dukes were stopped. Officer White saw the two suspects leave the plane and go to an unoccupied 1975 Ford LTD two-door automobile and get inside. A few minutes later a man that Officer White recognized as Junior Enfinger walked from the office building to the car and got inside. Officer White knew that Mr. Enfinger had been convicted for distributing amphetamines in 1975 or 1976.

The three stayed in the car for approximately fifteen minutes. Then the two men from the airplane returned to the plane. As soon as they left the car, Enfinger drove away. The police car containing Officers Sorrells, Saloom and Wood followed. The other two suspects boarded the plane and began preparation for flight. At this point Officer Rhegness, Corporal Hatfield, and Dave Conrad approached the suspects' plane, identified themselves, and asked the two to get out. The suspects existed the plane. Defendant Thomas dropped the keys as he was trying to lock the airplane door and, according to the officers "appeared nervous." The suspects were asked to get off the wings and to show their identification. They were then placed on the ground with their hands behind their heads.

At about this time Officer White and Agent Dukes arrived at the plane, and Officer Rhegness crawled up on the wing to see if there were any other suspects in the

plane. Although the information received and the observation up to this point did not indicate that anyone else was on board, the officers testified that it is standard procedure in a narcotics case to check the area and be sure that no one else is present. According to Officer Rhegness, while he was looking through the window at the interior of the plane, he saw an open paper bag inside another open paper bag on the floor behind the back seat. In the bag Rhegness could see a plastic bag about the size of a baseball containing a white powder. Officer Rhegness testified that previously he had seen cocaine packaged in this manner. At this point he entered the plane and, kneeling on one seat, leaned over and took a closer look at the paper bag and its contents, satisfying himself that the paper bag contained plastic packages of cocaine.

Defendants testified that the large paper bag which contained the smaller bag had been closed and rolled down from the top when placed in the plane. Defendants also testified that they never opened the sack after leaving Panama City. As discussed, infra, they contend that Officer Rhegness could not have seen the plastic bag containing white powder until he entered the plane and opened the paper bag behind the pilot's seat.

While the above was occurring, Officers Sorrells, Saloom and Wood were following Enfinger. They stopped him some distance from the airport. Saloom testified that as they stopped Enfinger he appeared to be reaching under the seat below him. The officers asked Enfinger to exit the vehicle, advised him that he was a suspect in a possible drug transaction, and advised him of his *Miranda* rights. Officer Saloom then got into the car with Enfinger for Enfinger to drive the car back to the airport. The police car followed. At the airport this car was locked and Enfinger was walked to the plane. By this time Officer Rhegness had locked the plane, placed a guard and returned to the suspects. Officer Rhegness placed all three defendants under arrest, read them their rights, and transported them first to a jail in Dothan and later to the Dale County jail.

Officer Rhegness then proceeded to get a warrant to search the rest of the plane. The affidavit of Officer Rhegness for the warrant reads:

"I have, with my own eyes seen cocaine, a controlled substance, in a plastic bag contained in a paper bag in a Piper Warrior aircraft, white in color with blue stripes, Identification Number N 3036T, within the past two (2) hours."

The affidavit also identifies the possessor and location of the airplane. Defendant Thomas was returned to the airport, and served with the warrant by Deputy Grant of the Dale County Sheriff's Department at approximately 9:50 p. m. The items sought to be suppressed were then catalogued and the powder was later identified as containing cocaine. The search was recorded on video tape by a television news crew from a local station, Channel 4, in Dothan. Defendants presented the film as evidence at the hearing.

Enfinger's car was driven by Mr. Saloom to the Dothan Police Department, locked and the keys given to Officer Sorrells. Later Officer White drove the car from Dothan to the Dale County Sheriff's office where it was locked and parked in front of the jail so that the jailer could watch. Neither Saloom nor White reported seeing or looking for anything in the car.

At the Dale County jail Deputy Grant checked the car to determine its vehicle identification number for the purpose of preparing the warrant affidavit. Deputy Grant testified that as he shone his flashlight into the car, he saw a clear package containing a white substance on the floorboard. It was pushed partly but not completely under the front seat. Deputy Grant testified that he had worked in other narcotic investigations involving cocaine and concluded that the package he saw probably contained the drug. Grant filed an affidavit for a warrant for the car which, after identifying the vehicle, stated:

"I have seen, within the past hour, a plastic bag containing a white substance which appears to be cocaine, under the

front seat of this vehicle. Junior Enfinger is now under arrest for a narcotics violation involving cocaine, along with two (2) other individuals, and was arrested while in possession of this vehicle. I have personal knowledge that Junior Enfinger has been arrested and convicted in the past for narcotics violations."

A warrant was issued and the car was searched about 11:20 p. m. The search uncovered two plastic bags containing white powder located beneath the front seat, which has been identified as cocaine.

## DISCUSSION OF LAW

Both search warrants in this case were issued on the basis of the affiant officers' personal knowledge and viewing of a substance which appeared to be cocaine. Although other operative facts are contained in the affidavits, they are not, standing alone, sufficient for a finding of probable cause for issuance of the warrants. The validity of the warrants turns on the validity of the means by which the officers obtained their information. But if a warrantless search of the car and plane was valid and revealed the objects sought to be suppressed, then whether or not a valid warrant was later obtained is irrelevant.

The evidence at the motion to suppress hearing would bear out the worst fears of those who oppose the claimed sweep of the Fourth Amendment exclusionary rule. Basically, the conflict in the testimony at the hearing was whether a paper bag was partially rolled at the top or was open sufficiently for the arresting officer to see what he claimed, i.e., that the bag contained cocaine. In *United States v. Williams*, 622 F.2d 830 (5th Cir. 1980), *cert. den.* 449 U.S. 1127, 101 S.Ct. 946, 67 L.Ed.2d 114, the Fifth Circuit in an *en banc* decision held that if the arresting officers acted "in good faith," the evidence should not be suppressed.

Without any question, the officer making the instant arrest reasonably believed that the search and seizure of the bag was proper. The Court after laboriously studying the latest cases from the Supreme Court of the United States and the Court of Appeals has reached the same conclusion. But as an intellectual exercise, the law on this subject rivals the most difficult problems which confront our courts. Surely courts should adopt a rule which is easier to follow for law enforcement officers who must make decisions in the field under trying circumstances. The result of an error in this confusing field of law in most cases is that the guilty go free. If the offense is trafficking in drugs, experience teaches that they go free to continue to practice their profitable and vicious business. The opinion of the *en banc* court in *Williams*, which may or may not be the law after *Robbins v. California*, 453 U.S. 420, 101 S.Ct. 2841, 69 L.Ed.2d 744 (1981), and *New York v. Belton*, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981), discussed later in this opinion, would make a decision in this case simple. This Court has not based its decision on *Williams*, however, because of doubts as to its being controlling after *Robbins* and *Belton*.

In the opinion of this Court, the searches in this case were entirely reasonable and in no way violated the command of the Constitution which forbids "unreasonable searches and seizures." When the instant searches are "judged in accordance with 'the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act,' *Brinegar v. United States*, 338 U.S. 160, 175, 69 S.Ct. 1302, 1310, 93 L.Ed. 1879 (1949), the arrest and subsequent search were reasonable and valid under the Fourth Amendment." *Hill v. California*, 401 U.S. 797, 91 S.Ct. 1106, 28 L.Ed.2d 484 (1970).

It would appear to this Court that the values sought to be preserved by the Fourth Amendment and the exclusionary rule when limited to the rule's proper role are too important to risk the growing public disenchantment with, and hostility to, a rule that in its swollen, claimed scope is baffling, frustrating and unworkable and seems to serve no purpose than to defeat legitimate, reasonable law enforcement efforts.

Considering the validity of the search in this case without regard to the rule of *Williams*, that the exclusion rule does not come into play when the officers have acted in good faith, the Court notes that there are two applicable exceptions to the warrant requirement of the Fourth Amendment; i.e., the "automobile exception" and the "search incident to arrest" exception.[1] These exceptions are distinct and different in scope although the line is often blurred by the fact that a search incident to an arrest often involves an automobile and its interior. The Court has concluded that defendant Enfinger's car is covered by the automobile exception and the search of the plane is justified as a search incident to an arrest.

■ Beginning with the decision in *Carroll v. United States*, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1924), the Supreme Court has defined an exception to the Fourth Amendment for automobile searches. The legality of a warrantless automobile search is based on the existence of probable cause to believe that the automobile is carrying contraband subject to forfeiture under the law, and the difficulties of securing a moveable vehicle while a warrant is obtained. It is the suspected contraband on which this analysis focuses and for which this type of warrantless search and seizure is allowed. *Carroll v. United States*, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1924). The Court has interpreted its *Carroll* decision to mean that an automobile may be stopped and contemporaneously searched where probable cause coupled with exigent circumstances exist. *Coolidge v. New Hampshire*, 403 U.S. 443, 458–464, 91 S.Ct. 2022, 2033–2037, 29 L.Ed.2d 564, *reh. den.* 404 U.S. 874, 92 S.Ct. 26, 30 L.Ed.2d 120 (1970). Exigent circum-

stances include those which indicate that the automobile cannot be adequately secured during the time necessary to obtain a warrant. *See United States v. Kreimes*, 649 F.2d 1185, 1192–93 (5th Cir. 1981). Moreover, if both the *Carroll* requirements are met at the time the automobile is stopped, the police may, alternatively to a contemporaneous search, seize the car, return it to the police headquarters and search it there. *Chambers v. Maroney*, 399 U.S. 42, 51–52, 90 S.Ct. 1975, 1981–1982, 26 L.Ed.2d 419 (1969); *Coolidge v. New Hampshire*, 403 U.S. at 458, 91 S.Ct. at 2033.

■ The scope of the search is limited, however, to that which can be seen by searching the passenger section and opening the trunk. The Supreme Court had previously held that luggage could not be opened because of the expectation that objects deposited in a closed suitcase will remain private and also for the reason that luggage can be seized and controlled while a warrant is sought. *Arkansas v. Sanders*, 442 U.S. 753, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1978). This past term in *Robbins v. State of California*, 453 U.S. 420, 101 S.Ct. 2841, 69 L.Ed.2d 744 (1981), a plurality of the Court held that the automobile exception did not extend to permit the warrantless search of any type of closed opaque container within the automobile.[2]

■ Although raised in dictum in prior decisions, the validity of the search incident to an arrest exception was expressly recognized by the Supreme Court in *Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), when it held "that a lawful custodial arrest creates a situation which justifies the contemporaneous search without a warrant of the person arrested and of the immediately surrounding area."

---

1. Because the Court is of the opinion that these two exceptions provide adequate ground for supporting the validity of the searches in question, this opinion will not discuss or decide whether the searches were also justified under the "plain view" exception. *Coolidge v. New Hampshire*, 403 U.S. 443, 464–472, 91 S.Ct. 2022, 2037–2041, 29 L.Ed.2d 564 (1970).

2. The *Robbins* case may be reconsidered when the Supreme Court decides the case of *United States v. Ross*, No. 80–2209, argued March 1, 1982, 50 L.W. 3707 (March 9, 1982). *Ross* involves the search of a paper bag found in defendant's car trunk. Moreover, there was not a majority in *Robbins* who were of the view that the container could not have been legally searched if the container had been in the interior of the car rather than in a locked trunk.

*New York v. Belton*, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981). The justification for this exception is the need of the police officer to protect himself by assuring that the prisoner does not have access to a weapon and the need to prevent evidence from being concealed, removed, or destroyed. 395 U.S. at 763, 89 S.Ct. at 2040. *New York v. Belton, supra,* a majority of the Court held that the passenger compartment of an automobile may be searched, any containers opened, and their contents examined pursuant to and contemporaneous with the lawful custodial arrest of the automobile's occupant. 453 U.S. at 460, 101 S.Ct. at 2864. This search may be made after the arrested occupants have been removed from the automobile.

The instant case, however, involves not only an automobile but an airplane. In *United States v. Olson*, 670 F.2d 185 (1982), an unpublished opinion of the Eleventh Circuit, the court held that the "automobile exception" applied to airplanes. The Eleventh Circuit did not reach the question of whether the search incident to arrest cases involving automobiles applied to an airplane. However, this Court can see no reason why the passenger compartment of a small airplane should be treated in a different manner than the passenger compartment of an automobile when it is searched contemporaneously with the lawful arrest of its occupants.

Both "the automobile" and "search incident to an arrest" exceptions are based on the existence of probable cause to believe that a crime is or has been committed. In the automobile exception, it is probable cause that the vehicle contains contraband; in the search incident to arrest, it is that the occupant has violated or is violating the law. The facts are judged on the basis of whether a reasonably prudent man of the officer's experience and training, looking at the "totality of the circumstances and the inferences" therefrom, would conclude that there is probable cause to believe that the vehicle or the individual is involved in violating the law. *United States v. Ballard*, 600 F.2d 1115,

1119 (5th Cir. 1979). *See also Whiteley v. Warden*, 401 U.S. 560, 566–569, 91 S.Ct. 1031, 1035–1037, 28 L.Ed.2d 306 (1970). (Warrantless arrest—same standard applicable to officer as to magistrate.) Information received from an informant can be used as the basis for a finding of probable cause. In the case of *United States v. Squella-Avendano*, 447 F.2d 575 (5th Cir.) *cert. den.* 404 U.S. 985, 92 S.Ct. 450, 30 L.Ed.2d 369 (1971), the court summarized the Supreme Court's analysis of the use of informant testimony in the leading cases of *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964) and *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). The informant's tip must undergo the following graduated analysis:

First, if the information provided is in such "detail" and "minute particularity" that "a magistrate, when confronted with such detail, could reasonably infer that the informant had gained his information in a reliable way," then the report, if sufficiently incriminating, may, without more, be grounds for finding probable cause. *Secondly, less detailed information from a reliable source may be used as grounds for a finding of probable cause if independent investigation by law enforcement agencies yields sufficient verification or corroboration of the informant's report to make it "apparent that the informant had not been fabricating his report out of whole cloth."* Corroboration must render the report "of the sort which in common experience may be recognized as having been obtained in a reliable way. Thirdly, even a report that is not under the above two standards sufficient of itself to establish probable cause may count in the magistrate's determination of probable cause, but only as one of a number of other factors of "further support" tending to show probable cause. Examples of satisfactory "further support" given in *Spinelli* involved law enforcement agencies' knowledge of independent facts which suggest criminal conduct or of facts which taken on an aura

of suspicion in light of the informant's tip. (emphasis added) 447 F.2d at 580. *See also United States v. Tuley*, 546 F.2d 1264, 1267 (5th Cir.) *cert. den.* 434 U.S. 837, 98 S.Ct. 128, 54 L.Ed.2d 99 (1977). Both the second and third phase of this analysis are applicable to the facts of this case. Lt. Bradford was given the information by a source, another officer, whom he knew and had worked with before and this source relayed that his informant had been reliable in the past. The officer did not give any facts indicating how his informant obtained the information. The officers instigated surveillance and everything observed, such as the identity of the plane, the identity of defendant Thomas, the erratic flight pattern of the plane, and its landing at one of the suspected destinations, confirmed that the informant's information was reliable. Moreover, the officers gathered further independent information which suggested that the information that the suspected individuals were transporting contraband narcotics was true. They identified the car which delivered defendants Thomas and Rollins to the airport as belonging to an individual with a prior drug conviction. Moreover, at Napier Field the two men in the plane met with another man known to have a prior drug conviction. They appeared to have landed only for the purpose of meeting with this man for fifteen minutes. The totality of the circumstances is compelling that the informant's information as to the cocaine was as reliable as the rest of his information and that there was probable cause to believe that some form of drug trafficking was occurring. Since there was probable cause to believe that the airplane contained contraband and its occupants were engaged in trafficking in contraband, there was probable cause to believe that some or all of that contraband had been transferred to defendant Enfinger's car, otherwise why the trip to Napier Field?

■ Although Lt. Bradford did not personally know the informant and have working knowledge of his reliability in the past, the police are not required to deal only with experienced versus first-time informants.

Where as here subsequent observation established that the informant had reliable information, specific experience of the informant's past reliability is not necessary. 447 F.2d at 582.

■ The conclusion that the officers had probable cause for believing that defendants were trafficking in drugs provides the basis for applying the above discussed exceptions to the warrant requirement. When defendant Enfinger's car was stopped, the officers had probable cause to believe it contained contraband and the exigent circumstances justified a search. The car was going to have to be moved several times before it could be secured, they were going to have to allow defendant to re-enter the car, and an officer was going to have to enter the car. Since the officers could have searched the car when it was stopped, they could have searched it after it was finally delivered to the proper sheriff's office. Thus it is irrelevant whether Officer Grant saw the clear plastic package of powder through the car window or by looking inside the car, although the Court finds his testimony credible that he did observe what appeared to be cocaine while attempting to obtain the car's identification vehicle number.

■ As to the airplane, there was probable cause to arrest the defendants and to search the passenger area of the plane from which the defendants had just exited. The police would be derelict in their responsibility if they did not verify that there was no one left in the plane and no accessible weapons or easily destroyed evidence left in the passenger compartment. This is particularly true when the airplane must be left at a public airport while the officers locate a judge or magistrate. *See United States v. Kreimes*, 649 F.2d at 1193 n.7 and text. Moreover, at the time Officer Rhegness entered the plane, he did not know if the third suspect had been apprehended, or if there was anyone else in the vicinity of the airport that had a connection with the suspects and their activities. The purpose of the incident to arrest exception is to allow dis-

covery and preservation of destructible evidence as well as to allow the police to protect themselves. *United States v. McFarland*, 633 F.2d 427, 429 (5th Cir. 1980).

▆▆ Finally, under the holding of *New York v. Belton*, if Officer Rhegness could search the passenger compartment incident to an arrest, he could open any closed container and examine its contents. The lawfulness of the discovery of the cocaine in the paper bag does not depend on whether Officer Rhegness viewed the contents from outside the plane or only after entering the passenger area and opening the bag. Although the "plain view" exception may also be applicable, there is no need to address that issue where the search was lawful incident to the arrest.[3]

▆▆ Defendants also contend that the warrants are invalid because of failure to comply with the Federal Rules of Criminal Procedure, Rule 41 requirements for searches at night. A state court judge and state police officers are not required to comply with the federal rules of procedure. The warrants are not invalid on this ground, and a violation of this rule would not compel suppression of the evidence.

For the above stated reasons, the Court will deny defendants' motions to suppress. The Court will also deny defendants' oral motion to discover the name of the officer who gave Lt. Bradford the information. An order will be entered in accordance with this opinion this date.

---

**3.** As indicated, the Fifth Circuit has held that the "automobile exception" applies to an airplane. Reading the various opinions in *Robbins*, it seems logical that a majority of the *Robbins* court would, relying on the expectation of privacy analysis of Justice Powell, uphold the search in this case, which involved only a paper bag in the interior of the plane, under the automobile exception.