**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Manuel Carrasco RIVERA,**
**Defendant-Appellant.**

**No. 78–5444.**

United States Court of Appeals,
Fifth Circuit.

May 24, 1979.

---

Robert R. Harris, Michael L. Williams, El Paso, Tex., for defendant-appellant.

Jamie C. Boyd, U. S. Atty., El Paso, Tex., LeRoy Morgan Jahn, Asst. U. S. Atty., San Antonio, Tex., for plaintiff-appellee.

Before COLEMAN, GODBOLD and IN-GRAHAM, Circuit Judges.

INGRAHAM, Circuit Judge:

Appellant Manuel Carrasco Rivera was convicted of knowing and intentional possession of marijuana in violation of 21 U.S.C. § 844(a)(1) (1976). The only issue on appeal is whether the district court erred in denying appellant's motion to suppress. We find no error in the district court's ruling and affirm the conviction.

On the evening of December 10, 1977, Customs Patrol Officers Ernesto Ortiz and Robert McGinty observed a vehicle which they suspected belonged to a convicted narcotics trafficker, William Douglas Holt, while on a roving border patrol in the Ysleta area of El Paso. The vehicle, a brown 1977 Chevrolet pickup truck with a camper shell on the back, was parked several spaces from a 1975 Chevrolet sedan in the otherwise deserted parking lot of the Big Eight

Shopping Center. The shopping center is approximately two miles from the United States-Mexico border.

After a license check by radio confirmed their suspicion that the truck belonged to Holt, Officers Ortiz and McGinty radioed Supervisory Customs Patrol Officer David Regela and Customs Patrol Officer David Hutchings to assist in the surveillance. After Officers Regela and Hutchings arrived, the officers observed a 1971 Cadillac drive into a space between the truck and the sedan. The driver of the Cadillac left that car and drove off in the truck. In the meantime, the officers conducted a license plate check on the Cadillac and the Chevrolet sedan and learned that neither license corresponded with the vehicles.

Officers McGinty and Hutchings then paired off and followed the truck, leaving Officers Ortiz and Regela to survey the Cadillac and the Chevrolet. A few minutes after the truck had left, two men walked across the parking lot, entered the two vehicles and drove away in tandem. Officers Ortiz and Regela followed and radioed their movement to Officers McGinty and Hutchings.[1]

Approximately two miles from the shopping center, Officers Ortiz and Regela turned on the patrol car's overhead rotating red light to stop the two vehicles.[2] When Officer Regela approached the Cadillac, appellant Manuel Carrasco Rivera, the driver, stepped out of the car. Standing near the Cadillac, Officer Regela observed a can of Glade air freshener on the rear floor and white powder on the back seat. He also detected the strong odor of marijuana. When asked to present some identification, appellant appeared to be nervous. Appel-

lant opened the car trunk in compliance with Officer Regela's request. Marijuana residue was discovered in the trunk. Meanwhile, Officer Ortiz had detected the odor of marijuana emanating from the trunk of the Chevrolet and had asked the driver of the Chevrolet, Jose Vaya Perches, to open his trunk. Marijuana residue was found there as well.

*Miranda* warnings were recited to appellant in English and Spanish. Appellant admitted that he had just bought the Cadillac and the Chevrolet from a man in Juarez.[3] He conceded that the vehicles had been used to transport marijuana before he bought them, but denied any participation in the drug traffic.

By the time Officers McGinty and Hutchings had arrived, Officers Regela and Ortiz had placed appellant and Mr. Perches under arrest for possession of marijuana. Samples of the residue were collected from the car trunks and sent to the laboratory of the Drug Enforcement Administration for positive identification. On January 18, 1978, appellant was indicted for knowingly and intentionally possessing marijuana in violation of 21 U.S.C. § 844(a)(1) (1976). Appellant filed a motion to suppress the marijuana and the incriminating statements uttered at the time of his arrest. The motion was denied. A guilty verdict was rendered by the jury.

Appellant argues that the district court erred in denying his motion to suppress, because the customs patrol officers stopped and searched his vehicles without probable cause.

At the outset, we note that customs patrol officers are not, "like local or

---

1. Officers McGinty and Hutchings were close enough to the truck to see that the bed of the truck was empty. When Officers McGinty and Hutchings were advised of the departure of the two cars from the parking lot, they abandoned their surveillance of the truck and proceeded to join Officers Ortiz and Regela.

2. Coincidently, the stop occurred in front of an auto repair shop owned by appellant.

3. Appellant also admitted ownership of a Lincoln Continental which had pulled into the driveway adjacent to his auto repair shop after the stop. Upon inspection of the trunk of the Lincoln, opened with appellant's consent, Officer Regela discovered still more marijuana residue.

state police, general guardians of the public peace." *United States v. Jackson,* 423 F.2d 506, 508 (9th Cir. 1970). Customs agents are authorized to prevent the importation of aliens and contraband into the United States. *See United States v. Soria,* 519 F.2d 1060, 1062 (5th Cir. 1975). Congress has granted customs officials broad statutory authority to stop and search vehicles for aliens and contraband. *See* 19 U.S.C. §§ 482, 1581, 1582 (1976). The Fourth Amendment, nonetheless, circumscribes the authority of customs patrol officers to stop and search vehicles. *See, e. g., United States v. Bowman,* 502 F.2d 1215, 1218 (5th Cir. 1974).

 Customs patrol officers on roving patrols may stop a vehicle, under the Fourth Amendment, "only if they are aware of specific articulable facts, together with rational inferences from those facts, that reasonably warrants suspicion that the vehicles contain" aliens or contraband. *United States v. Brignoni-Ponce,* 422 U.S. 873, 884, 95 S.Ct. 2574, 2582, 45 L.Ed.2d 607 (1975); *United States v. Cruz,* 581 F.2d 535, 538 (5th Cir. 1978). In deciding whether there is reasonable suspicion to stop a vehicle, customs officials are entitled to assess the facts in light of their experience. *United States v. Brignoni-Ponce,* 422 U.S. at 885, 95 S.Ct. 2574; *United States v. Sarduy,* 590 F.2d 1355 (5th Cir. 1979). Furthermore, the existence of reasonable suspicion for a stop must be determined from the "totality of the particular circumstances."[4] *United States v. Brignoni-Ponce,* 422 U.S. at 885, n. 10, 95 S.Ct. 2574; *United States v. Villarreal,* 565 F.2d 932, 937 (5th Cir. 1978).

 Prior to the customs patrol officers' stop of the vehicles, four articulable facts may have aroused a reasonable suspicion that the vehicles were being used to transport contraband. First, the officers observed a pickup truck belonging to a convicted narcotics trafficker in a virtually deserted shopping center parking lot two miles from the border. *See United States v. Diamond,* 471 F.2d 771, 773 (9th Cir.), *cert. denied,* 412 U.S. 932, 93 S.Ct. 2751, 37 L.Ed.2d 161 (1973). Second, the officers observed someone park a Cadillac near the truck and then drive off in the truck. *See United States v. Resendez,* 578 F.2d 1041, 1045 (5th Cir. 1978). Third, the officers discovered that the license plates on the Cadillac and the Chevrolet were not registered to those vehicles. *Cf. United States v. Pitts,* 588 F.2d 102 (5th Cir. 1979). Fourth, the officers observed two men walk through the parking lot to the Cadillac and Chevrolet and drive away in the vehicles, one behind the other. *See United States v. Escamilla,* 560 F.2d 1229, 1234 (5th Cir. 1977). Given the officers' experience in the United States Customs Service,[5] these articulable facts may well have engendered a reasonable suspicion that one or more of the vehicles under surveillance were "drop-type" or "load" vehicles being used for narcotics trafficking. The stop of the vehicles was, therefore, legal.

 Appellant argues that even if the investigatory stop was justified, the search was not. The constitutionality of the warrantless search of the vehicles by the customs officers depends on whether the officers had consent to search or probable cause

---

4. Traditionally, one of the elements of the *Brignoni-Ponce* test for an investigatory stop by customs officials has been " 'reason to believe that the vehicle had come from the border.' " *United States v. Woodard,* 531 F.2d 741, 743 (5th Cir. 1976); *United States v. Martinez,* 526 F.2d 954, 956 (5th Cir. 1975); *United States v. DelBosque,* 523 F.2d 1251, 1252 (5th Cir. 1975). In the instant case, the customs officials did not have reasonable grounds to believe that appellant had crossed the border in the vehicles. However, reasonable belief in a border crossing

"is not an essential element if other articulable facts 'reasonably warrant suspicion' " that the vehicles are carrying illegal aliens or contraband. *United States v. Escamilla,* 560 F.2d 1229, 1232 (5th Cir. 1977).

5. Officers Regela and Ortiz had been employed by the United States Customs Service for six and one-half years, prior to their encounter with appellant. Officer McGinty had worked for the Customs Service for five years and Officer Hutchings for four years.

to believe that the vehicles contained contraband. *United States v. Brignoni-Ponce,* 422 U.S. at 882, 95 S.Ct. 2574; *United States v. Garza,* 544 F.2d 222, 225 (5th Cir. 1976). Officers Regela and Ortiz both testified that they detected the odor of marijuana from the vehicles prior to the search. It is well settled that detection of the odor of marijuana furnishes probable cause to search a vehicle. *See, e. g., United States v. Ogden,* 572 F.2d 501, 502 (5th Cir. 1978). Officer Regela's observation of a can of air freshener and white powder on the back seat and floor of the Cadillac strengthened the probable cause to search the Cadillac, in light of his knowledge and experience that drug traffickers often use air fresheners and talcum powder to disguise the smell of marijuana. *See United States v. Reyna,* 546 F.2d 103, 104 (5th Cir. 1977); *United States v. Jaime-Barrios,* 494 F.2d 455, 457 (9th Cir.), *cert. denied,* 417 U.S. 972, 94 S.Ct. 3178, 41 L.Ed.2d 1143 (1974).

The stop and search of appellant's vehicles complied with the applicable Fourth Amendment requirements. Accordingly, we hold that the district court did not err in denying appellant's motion to suppress. The conviction is affirmed.

AFFIRMED.