UNITED STATES of America,
Plaintiff–Appellee,

v.

Peter Albert CIMINO,
Defendant–Appellant.

No. 79–5606.

United States Court of Appeals,
Fifth Circuit.
Unit A

Nov. 19, 1980.

Rehearing Denied Dec. 18, 1980.

William A. Bratton, III, Dallas, Tex., for defendant–appellant.

LeRoy Morgan Jahn, Asst. U.S. Atty., San Antonio, Tex., for plaintiff–appellee.

Before WISDOM, GARZA and REAVLEY, Circuit Judges.

PER CURIAM:

The appellant, Peter Albert Cimino, appeals his conviction for conspiring to possess marijuana in violation of 21 U.S.C. § 846 and for possession of marijuana with intent to distribute in violation of 21 U.S.C. §§ 841(a)(1). The sole issue is whether the district court erred in denying Cimino's motion to suppress. We find no error in the ruling, and we affirm the conviction.

On the morning of May 11, 1979, Customs Patrol Officer John Hollingsworth was on duty in Big Bend National Park, in western Texas, along the Mexican border. He had established surveillance in an abandoned house in the Castolon Historic Area near the Rio Grande. Using binoculars, he saw a white Pontiac turn off the main highway onto a side road approaching the river. After a few minutes a brown Chevrolet joined the Pontiac, and the two cars drove to a parking lot. Theodore Martinez, a co–defendant, left the Pontiac to confer with someone in the Chevrolet. Next the Pontiac drove down a dirt road and stopped in a "pit or wash area", a known contraband pickup point about 100 yards from the river. At the same time, Kenny Birch, another co–defendant, walked to a gate on the road leading to the river and looked around the area.

Officer Hollingsworth moved to a new position and watched the river for an hour and fifteen minutes. He observed no activity there. At Hollingsworth's radio request, a Park Service employee, Art Cash, checked to see that the two cars were still there and reported their license numbers. Hollingsworth walked and crawled up near the pit area and hid there. There were two men in the pit, but the Pontiac was gone. Shortly he saw Martinez running in a crouched position toward the parking lot. The Pontiac returned and parked in the pit area. Hollingsworth heard someone opening the car trunk, loading what sounded like several plastic mesh bags into it, and closing the trunk. Someone spoke about "loading up and zooming out in a hurry" and of reuniting at a cafe. The Pontiac drove away.

Hollingsworth returned to his vehicle and, with Cash, pursued the Pontiac. They stopped the Pontiac on the highway about seven miles north of Castolon. When Birch stepped out of the car, Hollingsworth searched him for weapons and announced he would conduct a "border search". Opening the Pontiac trunk, he found four plastic mesh bags containing marijuana. Cimino was arrested about ten minutes later when he drove up in the Chevrolet. A Customs Patrol Officer found a small bag of marijuana in Cimino's car.

On appeal, Cimino asserts that Hollingsworth did not have reasonable grounds for suspicion that any illegal activity was going on. Hence, he had no authority to stop and search the Pontiac, and the fruits of that search should not have been admitted into evidence.[1]

---

1. We note that there is some doubt as to whether Cimino had a legitimate expectation of privacy in either the Pontiac or the marijuana. If he did not, he may not assert any illegality in the search of the Pontiac or the seizure of the marijuana. *United States v. Salvucci*, 1980, –— U.S. ——, 100 S.Ct. 2547, 65 L.Ed.2d 619; *Rakas v. Illinois*, 1978, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387; *see Katz v. United States*, 1967, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576.

During all stages of this case the district court and the parties properly relied on *Jones v. United States*, 1960, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697. In *Jones* the Supreme Court held that persons charged with crimes of possession have "automatic standing" to challenge a search resulting in discovery or seizure

■ We have used a variety of formulations to describe the standard applicable to so–called extended border searches. *See United States v. Whitmire,* 5 Cir. 1979, 595 F.2d 1303, 1307 n.2, *cert. denied,* —— U.S. ——, 100 S.Ct. 3048, 65 L.Ed.2d 1136 (1980). Despite the discord in terminology, the general rule is not in doubt. A Customs Patrol officer may stop a vehicle only if he is aware of specific articulable facts, together with reasonable inferences from those facts, that warrant a reasonable suspicion that the vehicle contains illegal aliens or contraband. The officer may assess the facts in light of his professional knowledge and experience. Reasonable suspicion is to be judged on the totality of the particular circumstances. *United States v. Brignoni–Ponce,* 1975, 422 U.S. 873, 884–85 n.10, 95 S.Ct. 2574, 2582 n.10, 45 L.Ed.2d 607; *United States v. Rivera,* 5 Cir. 1979, 595 F.2d 1095, 1098; *United States v. Sarduy,* 5 Cir. 1979, 590 F.2d 1355; *United States v. Cruz,* 5 Cir. 1978, 581 F.2d 535, 538 (en banc); *United States v. Villareal,* 5 Cir. 1978, 565 F.2d 932, 937, *cert. denied,* 439 U.S. 824, 99 S.Ct. 92, 58 L.Ed.2d 116 (1978).

■ On the basis of this record we cannot say that the district court erred in denying Cimino's motion to suppress. To be sure, some of what Officer Hollingsworth saw was consistent with what one might expect from everyday tourists in a National Park. Mere presence in such an area, or stop–and–go traveling, is not enough to provoke reasonable suspicion. *United States v. Resendez,* 5 Cir. 1978, 578 F.2d 1041. But in this case Hollingsworth had more to go on. The suspects parked in a wash or pit area, 100 yards from the border. Hollingsworth knew that this pit was sometimes used for contraband pickups; indeed, he had personally taken part in another arrest there a few months before. When he approached the pit he heard large plastic bags being loaded into the Pontiac trunk. One suspect spoke of "loading up" quickly. With imagination, of course, one can come up with a legitimate explanation for all of these happenings. Still, taking the facts together, we cannot say that the district court was required to find that Hollingsworth could not have had a reasonable suspicion that he would find contraband in the Pontiac.

■ Cimino points out that Hollingsworth never saw anyone cross the Mexican border. Although reason to believe that a border crossing has occurred is a traditional element in the test for an investigatory customs stop, it is not an absolute requirement where other facts create a reasonable suspicion of the presence of illegal aliens or contraband. *Rivera,* 595 F.2d at 1089 n.4; *United States v. Escamilla,* 5 Cir. 1977, 560 F.2d 1229, 1232.

The stop and search of the car in this case did not violate the fourth amendment. Accordingly, the district court did not err in denying the appellant's motion to suppress. The conviction is AFFIRMED.

---

of the contraband objects alleged to be illegally possessed. Accordingly, the district court made no inquiry on this point. After all briefs were filed in this Court, however, the Supreme Court decided *Salvucci,* expressly overruling *Jones* and holding that defendants charged with crimes of possession, like all other defendants, may assert the exclusionary rule only if their own fourth amendment rights have been violated.

The Pontiac was registered in Cimino's name. Standing alone, however, legal title in premises searched or objects seized does not necessarily establish a legitimate expectation of privacy. *See Rawlings v. Kentucky,* 1980, —— U.S. ——, 100 S.Ct. 2556, 65 L.Ed.2d 633. We simply do not have a sufficient record to enable us to decide this issue. Since we hold that Officer Hollingsworth's search was legal under the fourth amendment, however, we need not inquire whether the search would have violated Cimino's rights if it had been illegal.