**UNITED STATES, Appellee,**

v.

**Kenneth Maynard POPOW, Appellant.**

No. 86–5361.

United States Court of Appeals,
Eighth Circuit.

Submitted May 15, 1987.

Decided June 16, 1987.

484

Daniel M. Scott, Minneapolis, Minn., for appellant.

Thorwald H. Anderson, Jr., Minneapolis, Minn., for appellee.

Before LAY, Chief Judge, MAGILL and TIMBERS,* Circuit Judges.

TIMBERS, Circuit Judge.

Kenneth Maynard Popow ("appellant") appeals from a judgment of conviction entered September 15, 1986 in the District of Minnesota, Edward J. Devitt, *Senior District Judge*, following a jury trial. Appellant was found guilty of having knowingly and willfully made a material false statement in a matter within the jurisdiction of the Immigration and Naturalization Service and the United States Customs Service by misrepresenting his true identity at the United States border, in violation of 18 U.S.C. § 1001 (1982).[1]

---

* Of the Second Circuit, by designation.

1. 18 U.S.C. § 1001 provides:

"Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000 or imprisoned not more than five years, or both."

On appeal appellant argues, first, that the false name presented by him at the United States border did not violate § 1001 because it was made solely with regard to a customs declaration and was withdrawn immediately upon further questioning by the investigating agent; second, that the admission in evidence of his prior deportation and conviction for reentry after deportation deprived him of a fair trial; and, third, that the totality of the jury instructions mistated the law and the facts.

We hold that the giving of a false identification at the United States border is punishable under § 1001 because it is both material and within the jurisdiction of a federal agency. We also hold that the admission in evidence of appellant's prior deportation and conviction for reentry after deportation was proper pursuant to Fed.R. Evid. 404(b). Finally, viewed as a whole, the jury charge correctly stated the law and the pertinent facts.

We affirm.

## I.

We summarize only those facts believed necessary to an understanding of the issues raised on appeal.

On the evening of April 5, 1986, appellant and a companion, Betty Jane Cozzone, entered the United States from Canada at the Noyes, Minnesota port of entry. Appellant was driving a Ryder rental truck which was towing a second, disabled truck. Cozzone was a passenger in the rental truck. Customs Inspector Radig, who also was cross-designated as an immigration officer, was on duty that evening. He approached the truck to ascertain the identification and destination of the two individuals seeking entry. Appellant orally identified himself to Radig as "Edward Anderson". He also produced a driver's license in the same name.

Radig then gave both appellant and Cozzone Customs Form 6059–B, a written baggage declaration form, to complete. Appellant completed the form and signed it "Edward Anderson". On the form, he identified himself as a Canadian citizen seeking entry to the United States for four days on business. He explained to Radig that, although he had not known Cozzone previously, she had hired him to drive the rental truck for her because to tow a disabled vehicle was too unwieldy a task for her. Upon delivery of the disabled vehicle to its destination in Pennsylvania, appellant was to be paid $250 and was to be given an airplane ticket to return home to Canada.

Due to discrepancies in the statements made by appellant and Cozzone, Radig decided a secondary inspection of Cozzone's purse was appropriate. While Cozzone accompanied Radig into an adjoining room, appellant spoke with another officer on duty, Inspector Drengson. Drengson, an employee of the Immigration and Naturalization Service, also was cross-designated as a customs officer.

During the search of Cozzone's purse, Radig discovered a man's wallet which contained two driver's licenses in the name of "Kenneth Popow", a birth certificate in the name of "Aldo Popow" and a social security card in the name of "Aldo Popow". When Radig informed Drengson of this discovery, the two officers decided that a full search of the luggage in the truck was required. The officers thereupon brought the luggage belonging to appellant and Cozzone into the customs house.

Drengson searched appellant's luggage and uncovered several articles of women's clothing and the like. Drengson believed that this was inconsistent with appellant's explanation that he had just met Cozzone. In the meantime, Radig searched Cozzone's luggage in the adjacent room. He found a manila envelope containing U.S. immigration documents in the name of "Popow". When appellant saw Radig enter the room with the manila folder in his hand, appellant told Drengson that he "had something to tell" him. Drengson then took a sworn statement from appellant, in which appellant admitted that his true identity was Kenneth Popow and that he had used the false identification of Edward Anderson in seeking entry to the United States. Appellant was placed under arrest.

On April 9 an indictment was returned charging appellant with one count of violating § 1001 by giving a false statement to customs and immigration officers in connection with his effort to enter the United States. Jury selection took place on July 8, followed by the trial on July 9. At trial, the government offered in evidence records of appellant's prior deportation and conviction for reentry after deportation. Over objection, the court held under Fed.R.Evid. 404(b) that the evidence was probative of appellant's motive, intent and knowledge. The evidence was admitted. The jury returned a guilty verdict on the evening of July 9.

On September 15 Judge Devitt sentenced appellant to the custody of the Attorney General for a period of one year. This appeal followed.

For the reasons stated below we affirm the judgment of conviction.

## II.

### A. *Validity of the Conviction under 18 U.S.C. § 1001*

Initially, appellant argues that his conviction may not stand because his actions do not constitute a crime under § 1001, as charged in the indictment. First, appellant argues that, because the Immigration and Naturalization Service ("I.N.S.") ordinarily does not use Form 6059–B as one of its prescribed forms, and he never otherwise falsely identified himself to I.N.S. Inspector Drengson, there is no jurisdictional basis for the indictment which charged him with making false statements in a matter within the jurisdiction of that agency. Second, although he concedes that his false statements were made orally to Customs Inspector Radig and in writing on Form 6059–B, he asserts that such statements were not material to the Customs Service within the meaning of § 1001 and hence the indictment was defective as to that agency.

The origin and history of § 1001 have been thoroughly reviewed in a number of cases, familiarity with which is assumed. *E.g., United States v. Bramblett*, 348 U.S. 503 (1955); *United States v. Gilliland*, 312 U.S. 86 (1941). The statute, of necessity, is couched in the broadest terms "to protect the authorized functions of governmental departments and agencies from the perversion which might result from the deceptive practices described." *United States v. Gilliland, supra*, 312 U.S. at 93. We turn to an application of the statute's terms to the instant case.

### 1. *Jurisdiction of a Federal Agency*

■ "[T]he term 'jurisdiction' should not be given a narrow or technical meaning for purposes of 1001." *Bryson v. United States*, 396 U.S. 64, 70 (1969) (citations omitted). Accordingly, we have held that there is jurisdiction, within the meaning of § 1001, if the false statement is made in some intended relationship to a matter that is within the jurisdiction of a federal agency. *Ebeling v. United States*, 248 F.2d 429, 434 (8th Cir.), *cert. denied*, 355 U.S. 907 (1957). Further, the false statement need not be made directly to the government agency; it is only necessary that the statement relate to a matter in which a federal agency has the power to act. *E.g., United States v. Richmond*, 700 F.2d 1183 (8th Cir.1984); *Friedman v. United States*, 374 F.2d 363 (8th Cir.1967). The initial question posed by appellant, therefore, is whether giving a false identification, both orally and on a Customs Form to a Customs Inspector, relates to a matter in which the I.N.S. has the power to act. We answer in the affirmative. In so doing, we review briefly the roles of these officials.

Customs inspectors are employees of the Customs Service, which is under the aegis of the Department of the Treasury. Immigration inspectors are employees of I.N.S., which is under the aegis of the Department of Justice. The investigative powers of both agencies are broad; although somewhat dissimilar, they are harmonious. Congress has granted customs inspectors broad authority to examine vehicles, beasts, persons and their belongings crossing the national boundaries. 19 U.S.C. § 482 (1982). *See also* 19 U.S.C. §§ 1496, 1581(a) (1982). "Customs agents are authorized to prevent the importation of

aliens and contraband into the United States." *United States v. Rivera,* 595 F.2d 1095, 1098 (5th Cir.1979). Immigration inspectors stationed at ports of entry, such as Noyes, Minnesota, in the instant case, are authorized to search any vehicle in which they believe aliens are being brought into the United States. 8 U.S.C. § 1225 (1982). Under the immigration laws, I.N.S. inspectors do not have the authority to search bags, containers, or compartments too small to conceal persons. By a series of proper delegations, however, I.N.S. inspectors may be designated as customs inspectors by the Secretary of the Treasury. "[A]ny officer of the Bureau of Customs of the Treasury Department ... or any agent or other person authorized by law or designated by the Secretary of the Treasury to perform duties of an officer of the Customs Service ..." serves as a customs inspector. Likewise, a customs inspector may be designated to perform the duties of an immigration inspector. "[A]ny employee or class of employees of the Service or of the United States designated by the Attorney General ... to perform the functions of an immigration officer ..." serves as an immigration inspector. 8 U.S.C. § 1101(a)(18) (1982). "It appears that Border Patrol agents wear two hats, one as an immigration officer and the other as a customs officer." *United States v. McDaniel,* 463 F.2d 129 (5th Cir.1972), *cert. denied,* 413 U.S. 919 (1973).

■ In the instant case, both inspectors testified that they had been cross-designated as inspectors of each other's respective agencies. Such cooperation between agencies sharing like concerns is both mandatory and laudable. We hold, therefore, that when appellant concealed his true identity from Inspector Radig he made a false statement in a matter within the jurisdiction of the I.N.S., within the meaning of § 1001. That agency clearly has the power to make a final determination to exclude or admit properly identified aliens. That is the source of its jurisdiction. Appellant's subterfuge was an attempt to inhibit the lawful exercise of that power.

■ It matters not whether we consider appellant's oral statement of false identity or his false written signature, for the law does not recognize any distinction between oral and written statements under § 1001. *United States v. Beacon Brass,* 344 U.S. 43, 46 (1952). Appellant's conduct was equally culpable when he committed either act, or both of them.

Turning to appellant's final jurisdictional argument, he invites us to hold that, because the form on which he placed his false signature had not been designated as an immigration form, the I.N.S. lacked jurisdiction over his conduct. We decline the invitation. To accept this argument would be to view § 1001 with myopic vision, in derogation of the intent of Congress. Both inspectors testified that they use Form 6059–B for identification and entry purposes for individuals desiring to enter the United States. As one court has recognized, Form 6059–B is used "as a first line defense to keep contraband and narcotics from entering the United States by identifying suspected or wanted individuals." *United States v. Parten,* 462 F.2d 430 (5th Cir.), *cert. denied,* 409 U.S. 983 (1972) (rejecting argument that appellants' use of fictitious names on Form 6059–B did not violate § 1001). The national interest of self protection reasonably requires that an individual wishing to claim the privilege of entering this country identify himself truthfully.

### 2. *Materiality*

■ Appellant next contends that any false statement he made in connection with his attempted entry into the United States was not material to the Customs Service within the meaning of § 1001 because his fictitious identification had nothing to do with the declaration of dutiable goods. We reject the narrow construction of the functions of the Customs Service urged on us by appellant. "Realization of customs officials' special problems has resulted in courts giving the broadest interpretation compatible with our constitutional principles in construing the statutory powers of customs officials." *United States v. Stan-*

ley, 545 F.2d 661, 666 (9th Cir.1976), *cert. denied,* 436 U.S. 917 (1978).

"[M]ateriality involves only the *capability* of influencing an agency's governmental functions, i.e., does the statement have a 'natural tendency to influence or is it capable of influencing agency decision?'" *United States v. Richmond, supra,* 700 F.2d at 1188 (citations omitted). Appellant claimed the privilege of entry into this country. It cannot be seriously asserted that the use of a fictitious identification did not have the capability of influencing the inspector's decision as to whether to grant him that privilege. The statement, accordingly, was material within the meaning of § 1001.

**B. *Evidence of Appellant's Prior Deportation and Conviction For Reentry after Deportation***

■ Appellant argues that the admission in evidence of his prior deportation and conviction for reentry after deportation deprived him of a fair trial. The argument is without merit.

Fed.R.Evid. 404(b) provides that:

"Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

The government introduced evidence of appellant's prior deportation and conviction for reentry after deportation for the purpose of proving appellant's motive, intent and knowledge in willfully and knowingly giving Inspector Radig a fictitious name and providing fictitious identification to him.

The prior immigration records were relevant to appellant's knowledge of immigration procedures and the required documentation for entry. The records also were probative of appellant's motive and intent in willfully using a false identity at the Noyes port of entry. Evidence of appellant's prior deportation and conviction for reentry after deportation therefore was properly admitted pursuant to Rule 404(b).

**C. *Jury Instructions***

We turn next to appellant's final argument, that the court's instructions to the jury deprived him of a fair trial. A thorough review of the instructions leaves us with the firm conviction that there is no basis in them for overturning appellant's conviction.

**1. *Elements of the Offense***

Appellant contends that the court improperly reduced the elements of the crime to be proven to just one by stating, "[b]ut in effect, this law says it's against the law for a person to lie in connection with admission to the United States". We disagree that this isolated snippet altered the government's burden of proof, for directly following that statement the court turned to an extensive discussion of the several elements of the crime charged. Moreover, the court explicitly instructed the jury that the issue was *more* than whether appellant had lied.

**2. *Function of a Grand Jury***

Appellant also contends that in explaining the function of the grand jury the court suggested his guilt to the petit jury by stating that grand jurors "... just hear enough evidence to make the judgment that a crime has probably been committed and that the person to be charged has probably committed it". This argument borders on the frivolous. First, the statement was made with reference to the role of "a" grand jury, not the particular grand jury which indicted appellant. Second, the court clearly admonished the petit jury that the fact that an indictment had been returned by a grand jury was not evidence of any kind against an accused and that the return of an indictment did not create any presumption or permit any inference of guilt.

We have considered carefully all of appellant's claims of error and we find that they are without merit.

## III.

To summarize:

After considering carefully in detail each of appellant's claims of error, we conclude that the judgment of conviction must be affirmed. We hold that presenting a false identity in order to enter the United States is culpable conduct under 18 U.S.C. § 1001. The false statement was within the jurisdiction of the Immigration and Naturalization Service and was material to the Customs Service. We hold that the admission in evidence of appellant's prior deportation and conviction for reentry after deportation was proper pursuant to Rule 404(b) of the Federal Rules of Evidence. We also hold that, viewed as a whole, the jury charge correctly instructed the jury on the law and the pertinent facts.

Affirmed.