**UNITED STATES of America, Appellee,**

v.

**Victor WHITAKER, Appellant.**

**No. 87-1689.**

United States Court of Appeals,
Eighth Circuit.

Submitted March 16, 1988.

Decided June 8, 1988.

Ronald E. Jenkins, St. Louis, Mo., for appellant.

Kathianne K. Crane, Asst. U.S. Atty., St. Louis, Mo., for appellee.

Before McMILLIAN, WOLLMAN and BEAM, Circuit Judges.

BEAM, Circuit Judge.

Victor D. Whitaker appeals his conviction of three counts of making false statements to an agency of the United States. We affirm.

I. BACKGROUND

On November 17, 1986, Whitaker was charged with two counts of mail fraud and three counts of making false statements to an agency of the United States, i.e., the

Federal Deposit Insurance Corporation (FDIC). At trial, Whitaker was acquitted of the two counts of mail fraud and convicted of the three counts of making false statements. He was sentenced to concurrent terms of three years imprisonment and fined $10,000.00 on each count.

The charges resulted from an examination performed by the FDIC on Farmers and Merchants Bank of Huntsville, Missouri (Bank) and an earlier visitation at the institution. At the time of the visitation and the examination, Whitaker was president of the Bank.

In September of 1982, an FDIC examiner performed a visitation which lasted approximately one week. The purpose of the visitation was primarily to review changes in the Bank's loan portfolio since the last FDIC inspection, looking specifically at new loans made and at existing loans with large increases.

Early in the week of the visitation, the FDIC examiner was alerted by a confidential source to look at two loans which had been made to certain individuals. The first was a loan made to Dennis McQueen and Tom Cummings which at that time had an outstanding balance of $84,000.00. The second was a loan made to Linda and Russell Putnam which had an outstanding balance of $327,550.00.

During the course of the visitation, the FDIC examiner met with Whitaker and discussed approximately 25 of the Bank's loans. Among the loans discussed were those made to McQueen and Cummings and the Putnams. Although this discussion took place after the examiner had received the information from the confidential source, he did not ask Whitaker any more questions about the McQueen and Cummings and Putnam loans than he asked about the other loans. The examiner did not pursue the matter regarding these particular loans because he wanted to protect the source's confidentiality, and because none of the information Whitaker gave him regarding these loans seemed to warrant further inquiry.

In particular the examiner asked Whitaker about the nature of the business activity of McQueen and Cummings. Whitaker responded that McQueen was in the carpet business and Cummings was in the shoe business. The examiner then inquired about the purpose of the loan. Whitaker answered that the proceeds of the loan were to be used for business purposes, with "some" of the funds being used for "penny" stock. In truth, none of the funds were used for Cummings' and McQueen's businesses. All of the funds were used to purchase penny stocks and for related expenses. One of the penny stocks purchased with the proceeds was Totem Industries, Ltd., which company operated a silver mine in Canada. At the time the loan was made, Whitaker was on the board of directors of Totem. In fact, during most of 1982, Whitaker, McQueen, Cummings, the Putnams and others formed an investors group in an attempt to raise the price of Totem stock and eventually to obtain control of Totem.

The examiner asked Whitaker the same questions regarding the loan to the Putnams. Whitaker told the examiner that Mr. Putnam had recently opened a boat business and that the proceeds of the loan were for that business. In fact, the proceeds of the loan were used to purchase Totem stock.

In March of 1983, the FDIC examiner returned to the Bank to conduct a full bank examination. Again Whitaker was asked by the examiner what the loan to the Putnams was for, and again he replied it was for the Putnams' boat business.

As a result of these three statements to the FDIC examiner regarding the use of the proceeds of the loans, the three counts of making false statements to an agency of the government were brought.

Whitaker raises two arguments in support of reversal: (1) the false statements he made to the FDIC examiner were not material, and (2) the evidence was insufficient to support the jury's finding of guilt.

## II. DISCUSSION

### A. Materiality of the Statement

█ Whitaker was convicted of violating 18 U.S.C. § 1001, which reads in part:

Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly or willfully * * * makes any false, fictitious or fraudulent statements or representations * * * shall be fined not more than $10,000 or imprisoned not more than five years, or both.

The requirement that the statement or representation be material as well as false is not set forth in the statute, however it is recognized as a judicially imposed "essential element" of a charge under section 1001. *United States v. Voorhees*, 593 F.2d 346, 349 (8th Cir.1979) (citing *United States v. Gilbertson*, 588 F.2d 584, 589 (8th Cir.1978); *United States v. Jones*, 464 F.2d 1118, 1121 (8th Cir.1972), *cert. denied*, 409 U.S. 1111, 93 S.Ct. 920, 34 L.Ed.2d 692 (1973)).

Whitaker asserts that the issue of materiality is determined by whether in the particular context involved "the false statements [could] have affected or influenced the exercise of a governmental function." *United States v. Salinas–Ceron*, 731 F.2d 1375, 1377 (9th Cir.1984) (citing *Brandow v. United States*, 268 F.2d 559, 565 (9th Cir.1959)). Whitaker argues that his statements could not have "affected or influenced" the function of the FDIC because the examiner had information which he obtained from the confidential source and the Bank's files which would lead the examiner to discount Whitaker's statements. The examiner knew that these loans were suspicious because of the confidential statement. He also knew the McQueen and Cummings loan was secured by 125,000 shares of Totem stock and that the Putnam loan was unsecured. Given this knowledge, Whitaker's statements could not have influenced the FDIC. We reject this argument.

■ "[M]ateriality involves only the *capability* of influencing an agency's governmental functions, i.e., does the statement have a 'natural tendency to influence or is it capable of influencing agency decision?'" *United States v. Popow*, 821 F.2d 483, 488 (8th Cir.1987) (citing *United States v. Richmond*, 700 F.2d 1183, 1188 (8th Cir.1983) (emphasis in original). The

issue is whether the statements, viewed alone, were capable of influencing the function of the FDIC. It is irrelevant what the agent who heard the statement knew at the time the statement was made. A false statement can be material even if the agent to whom it is made knows that it is false. *See United States v. Goldfine*, 538 F.2d 815, 820–21 (9th Cir.1976).

Further, in his testimony at trial, the FDIC examiner stated that if he had known that the McQueen and Cummings loan had been used to purchase penny stocks, then he would have inquired further to determine if there were other bank loans being used for penny stock. In addition, he stated that he would have recommended that this kind of activity be stopped immediately. At that time, the FDIC had no proof that the proceeds were used to purchase penny stock. The FDIC examiner further testified that had he known that the proceeds of *both* the McQueen and Cummings and Putnam loans were being used for the purchase of penny stock, he would have been even more anxious to have this activity stopped and would have gone to the Bank's board of directors to discuss the matter.

Because the statements Whitaker made to the FDIC examiner had the "capability of influencing" the decisions of the FDIC, and did, in fact, affect the actions of the examiner and, thus, the ability of the FDIC to evaluate the risks involved in providing the Bank with deposit insurance, we hold that the statements were material.

**B. Insufficient Evidence**

■ Whitaker's second argument is that the evidence at trial was insufficient to support the jury's finding of guilt. On review, we must uphold the conviction if, viewing the evidence in a light most favorable to the government, there is substantial evidence to support the jury's verdict. *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942).

■ In order to establish an offense under the second clause of 18 U.S.C. § 1001, the government must prove the following

elements: (1) a statement; (2) which is false; (3) and material; (4) made knowingly and willingly; (5) within the government agency's jurisdiction. *United States v. Gilbertson,* 588 F.2d 584, 589 (8th Cir.1978) (citing *United States v. Lanier,* 578 F.2d 1246 (8th Cir.), *cert. denied,* 439 U.S. 856, 99 S.Ct. 169, 58 L.Ed.2d 163 (1978)). Having determined that Whitaker's statements were material, we find there is substantial evidence to support the jury's verdict finding Whitaker guilty of making false statements to an agency of the United States.

## III. CONCLUSION

For the foregoing reasons, the decision of the district court is affirmed.