[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-11843
_____

D.C. Docket No. 4:16-cr-00031-MW-CAS-1


UNITED STATES OF AMERICA,

Plaintiff – Appellee,

versus

ROOSEVELT WILLIAMS,

Defendant – Appellant.


_____

Appeal from the United States District Court
for the Northern District of Florida
_____


(April 19, 2018)

Before TJOFLAT, WILLIAM PRYOR, and ANDERSON, Circuit Judges.

PER CURIAM:

Roosevelt Williams appeals the denial of his motion to suppress evidence obtained from searches of his vehicle in 2011 and 2013. We hold that the District Court did not err in denying the motion to suppress because in both instances the police had probable cause to believe that his vehicle contained evidence of a crime.

I.

A.

On October 19, 2011, Officer Bryan Cutcliffe of the Florida State University Police Department pulled Williams over for speeding. When Officer Cutcliffe approached Williams' vehicle, he detected "the odor of burnt marijuana." He ordered Williams out of the car and searched him[1] and his vehicle. The search revealed "small bits of cannabis," a number of pre-paid gift cards, some receipts, and banking documentation.[2] When Officer Cutcliffe questioned Williams about the pre-paid gift cards, Williams "appeared to get very nervous and he began to

---

[1] In his testimony, Officer Cutcliffe admitted that "nothing . . . specifically led [him] to believe that [Williams]" was armed and dangerous when he patted Williams down.

[2] Officer Cutcliffe testified in this case. He recounted the traffic stop as follows.

> Due to the odor of cannabis coming from the car, I told Mr. Williams that I was going to search him and the car. I had him exit the car, at which point I searched his pockets looking for cannabis. When I did so, I found two pre[-]paid gift cards in his pocket.

2

shake." Rather than arrest Williams, however, Officer Cutcliffe confiscated the pre-paid gift cards and allowed Williams to leave the scene.

Two years later, on June 13, 2013, Deputy Michael Wheeler of the Clayton County Sheriff's Office stopped Williams for traveling seventy-six miles an hour in a zone with a speed limit of forty-five miles per hour. When Deputy Wheeler spoke with Williams at the window of his vehicle, Williams appeared "nervous and sweating."

After running Williams' license and registration, which came back clear, Deputy Wheeler decided to arrest Williams for the traffic offense because "he ha[d] an out-of-state plate" and "[i]t was better to go ahead and have him . . . make bond on it."[3] Before arresting Williams, Deputy Wheeler requested another officer to transport Williams.[4] Deputy Brian Hoe responded to the request and arrived to assist Deputy Wheeler.

At this point, the deputies approached Williams in his vehicle to arrest him. As they approached, Deputy Wheeler[5] and Deputy Hoe both noticed "the smell of

---

[3] In Georgia, a police officer has discretion to arrest a person for a traffic violation. Ga. Code Ann. § 17-4-23(a). ("A law enforcement officer may arrest a person accused of violating any law or ordinance governing the operation, licensing, registration, maintenance, or inspection of motor vehicles . . . by the issuance of a citation, provided that the offense is committed in his presence.").

[4] Deputy Wheeler could not transport Williams because he had a K-9 Unit in his patrol vehicle.

[5] On July 2, 2013, Williams appeared before the Clayton County Magistrate Court for a preliminary hearing on the 113 counts that were filed against him following the traffic stop of

burnt marijuana" coming from the vehicle.[6] Deputy Hoe observed Williams "trying to put" money into "his right pocket, front pocket." To Deputy Wheeler, Williams appeared "very nervous" and "couldn't control his hands." When the deputies asked Williams to leave his vehicle, Williams initially refused and was "reaching throughout the vehicle . . . for items." The deputies eventually "help[ed] him out" of the vehicle.

After removing Williams from the vehicle, the deputies handcuffed and searched him. The search revealed $3,500 in cash in his pocket. Then, while Deputy Hoe was securing Williams in his patrol vehicle, Williams told him that he had a firearm near the driver's seat of his vehicle. Deputy Hoe informed Deputy Wheeler, who located the firearm and then performed a search of the car, including the trunk, ostensibly as an inventory search.[7] The search of the vehicle uncovered a few thousand dollars in cash, a loaded handgun, more than twelve pre-paid debit cards, a laptop computer, two iPhones, and a Samsung phone.[8] Williams' vehicle was then towed to the Clayton County Sheriff's Office.

---

June 13. In the hearing, Deputy Wheeler testified that he could "smell marijuana coming from the vehicle" as he spoke with Williams.

[6] Deputy Hoe testified that he was "[v]ery unlikely" to misidentify the smell of marijuana.

[7] Deputy Wheeler permitted Williams to call someone to pick up his car so that it would not need to be impounded. He called his cousin who lived in Atlanta, but she never arrived.

[8] While the deputies conducted the search of his vehicle, Williams broke the window of the patrol vehicle and fled on foot. The officers quickly apprehended him.

4

B.

The Internal Revenue Service ("IRS") sought to use the pre-paid gift and debit cards discovered through the searches—along with evidence discovered on the laptop and cell phones recovered in the 2013 search—against Williams. On July 5, 2016, based in part on the evidence seized from the searches, a grand jury in Tallahassee, Florida issued a fourteen-count indictment against Williams for a scheme in which he fraudulently filed and cashed the tax returns of unsuspecting individuals. The indictment alleged that Williams committed twelve counts of theft of government property, 18 U.S.C. §§ 641–42, and two counts of aggravated identity theft, 18 U.S.C. § 1028A(a)(1).

Williams was arrested on July 15, 2016 in Minnesota. He appeared before the United States District Court for the District of Minnesota, with counsel present. The District Court ordered Williams detained until a hearing was held on July 20, 2016. At the hearing, the District Court set bond at $25,000 and ordered him removed to Northern District of Florida in Tallahassee, where the indictment was issued. On the day of the hearing, Williams was released after signing an "Order Setting Conditions of Release" which, among other things, prohibited him from "violat[ing] any federal, state, or local law while on release." Williams was

5

ordered to appear before the District Court for the Northern District of Florida on August 8, 2016.

On July 29, not long after his release, an arrest warrant was issued for Williams because he violated his conditions of release by being arrested in Aventura, Florida for battery on law enforcement, escape, resisting arrest without violence, and credit card fraud. He was arrested on August 8, 2016. On the day of his arrest, Williams appeared with counsel before a Magistrate Judge. The Magistrate Judge ordered him detained until a detention hearing could be held on August 12.[9] Williams also pled not guilty to the grand jury charges, and a trial was scheduled for September 12, 2016. However, the District Court later granted a continuance and rescheduled the trial for November 14, 2016.

Before trial, Williams moved to suppress the evidence obtained from the searches of his vehicle in 2011 and 2013 in an effort to destroy the foundation of the charges against him. He contended that the Deputies Wheeler and Hoe conducted the inventory of his vehicle in 2013 as a pretext for an investigative search. He further argued that the odor of marijuana, without more, did not create probable cause to search the car for evidence of criminal activity. Williams also

---

[9] In the hearing held on August 12, the Magistrate Judge found "probable cause to believe that [Williams] committed several . . . felony crimes while on pre-trial release" and revoked his conditional release. It thus ordered that Williams remain detained pending trial. Williams moved to revoke the detention order on September 12, 2016. The District Court denied the motion because Williams "demonstrated that he is unwilling to abide by conditions of release and is unlikely to do so if he were again released."

claimed that the officer who patted him down in 2011 did not have grounds to suspect that he was armed and dangerous.

The Government responded to the suppression motion on November 7.[10]  It argued that the officers in 2011 and 2013 had probable cause to search the vehicle because "the smell of marijuana alone justifies the search of the vehicle from which it emanates."  In the alternative, the Government claimed that the deputies in 2013 followed protocol when they inventoried Williams' vehicle after his arrest.

The hearing on the motion to suppress occurred on November 14.  In the hearing, the District Court heard testimony and argument on each suppression claim.  As to the 2011 search, the District Court framed the factual issue as whether Officer Cutcliffe in fact detected the odor of marijuana coming from Williams' vehicle.  It found Officer Cutcliffe's testimony to be credible and thus held that he had probable cause to search the car.[11]

_____

[10] The Government also moved to continue the trial because the suppression hearing was scheduled for the same day as the trial, November 14, 2016, and Williams indicated that he would plead guilty if his motion to suppress did not succeed.  The District Court granted the continuance.

[11] However, the District Court granted the motion to suppress as to the credit cards that Officer Cutcliffe retrieved from Williams' pocket.  First, the District Court found that the Officer Cutcliffe did not have reason to suspect that the credit cards were weapons or other illicit goods and therefore could not reach into the pocket.  Second, the District Court determined that Officer Cutcliffe did not have probable cause to search Williams for evidence of marijuana because Officer Cutcliffe "had no recollection that Mr. Williams himself smelled of marijuana."  Therefore, the District Court granted the motion to suppress as to the 2011 search of Williams' person.

The District Court upheld the 2013 search on the ground that Officer Wheeler had probable cause that "contraband or evidence of a crime could be found in the vehicle." In reaching this determination, the District Court credited Officer Hoe's testimony as to the smell of marijuana in the vehicle and summed up the situation as follows: "Mr. Williams was stopped for speeding. His vehicle reeked of marijuana. When he exited the vehicle to be arrested, he was found to be carrying more than three thousand dollars in cash and acknowledged that he had a loaded firearm in the vehicle." Given these facts, the District Court concluded that Officer Wheeler had probable cause to search Williams' vehicle.[12] Thus, the District Court denied the motion to suppress the evidence from the searches of Williams' vehicle in 2011 and 2013, but granted the motion as to the search of his pocket in 2011.[13]

On appeal, Williams argues that the 2013 search was an improper and pretextual inventory search—even though the District Court held that the search

---

[12] The District Court, however, held that the inventory search did not provide an alternative basis for upholding the search of Williams' vehicle because the testimony suggested that "the decision to impound the car was based on the suspicion of evidence of criminal activity as opposed to simply conducting an inventory search."

[13] On December 22, 2016, after the District Court denied his motion to suppress, Williams pled guilty to each count of the grand jury indictment. However, the plea agreement permitted him to appeal the denial of his motion to suppress. On April 28, 2017, Williams filed his amended notice of appeal challenging the denial of the motion to suppress.

8

could not be justified as an inventory search.[14]  He contends that it is irrelevant whether Deputies Wheeler and Hoe smelled marijuana because they decided to impound and inventory the vehicle.  The Government replies that the officers had probable cause to search the vehicle because they smelled marijuana. Alternatively, the government argues that the officers performed a valid inventory search.

## II.

When we review a denial of a motion to suppress, we review the district court's findings of fact for clear error and its applications of law *de novo*, construing the facts in the light most favorable to the party that prevailed below. *United States v. Gibson*, 708 F.3d 1256, 1274 (11th Cir. 2013).  We accept the credibility determinations of the fact finder, unless they are "contrary to the laws of nature" or "so inconsistent or improbable on its face that no reasonable fact finder could accept [them]."  *United States v. Holt*, 777 F.3d 1234, 1255–56 (11th Cir. 2015) (quoting *United States v. Ramirez-Chilel*, 289 F.3d 744, 749 (11th Cir. 2002)).

The present case concerns the warrantless search of a vehicle.  In general, such a warrantless search is *per se* unreasonable.  *United States v. Bradley*, 644 F.3d 1213, 1262 (11th Cir. 2011).  As an exception, however, law enforcement

---

[14] In his brief on appeal, Williams stated that the District Court erred in denying his motion to suppress and recited facts but did not raise any arguments as to the 2011 search.

may conduct a warrantless search of a vehicle if it is operational and there is probable cause to believe that the vehicle contains evidence of a crime. *See United States v. Tamari*, 454 F.3d 1259, 1261–62 (11th Cir. 2006); *United States v. Watts*, 329 F.3d 1282, 1285–86 (11th Cir. 2003). To determine whether probable cause exists, we perform an objective analysis that does not account for the subjective beliefs of law enforcement. *United States v. Franklin*, 694 F.3d 1, 9 (11h Cir. 2012).

In a long line of cases, we have held that the smell of marijuana coming from a person's house or vehicle establishes probable cause for a search. *See Merricks v. Adkisson*, 785 F.3d 553, 560 n.3 (11th Cir. 2015); *United States v. Tobin*, 923 F.2d 1506, 1512 (11th Cir. 1991) (en banc); *United States v. Rivera*, 595 F.2d 1095, 1098–99 (5th Cir. 1979); *see also United States v. Johns*, 469 U.S. 478, 482, 105 S. Ct. 881, 884 (1985). It is irrelevant if an inventory search occurred as a pretext for gathering evidence where the police officers already had probable cause that justified the search. *Whren v. United States*, 517 U.S. 806, 811–12, 116 S. Ct. 1769, 1773 (1996).

We take the 2011 and 2013 searches in turn. As to the 2011 search, the District Court credited Officer Cutcliffe's testimony that he smelled marijuana emanating from the vehicle. We find no reason to overturn this determination. Therefore, since Officer Cutcliffe smelled marijuana coming from the vehicle, he

10

had probable cause to search it.  The District Court thus did not err in denying the motion to suppress as to the 2011 search.

With respect to the 2013 search, the District Court credited the testimony of Deputy Hoe.  It made the following finding of fact.

> Mr. Williams after being stopped was—appeared nervous and was engaged in furtive movements such that Officer Wheeler felt compelled to ask Officer Hoe to come around to the driver's side door.  Whereupon, Officer Wheeler testified [at the preliminary hearing that he smelled marijuana].  But as corroborated . . . here in open court, the hearsay [of Officer Wheeler] is consistent with sworn testimony of Officer Hoe; namely, that he smelled marijuana as well.

The District Court also found that the deputies discovered $3,500 in cash on Williams' person and that Williams told the deputies he had a firearm in his car. The District Court thus summarized the situation as follows: "we have a car that reeks of marijuana, somebody that's armed, somebody that's got several thousand dollars of cash, and somebody that's nervous and engaged in furtive movements in the car."  There is no reason to overturn these factual findings.

Contrary to Williams' contentions, a pretextual inventory of a vehicle is irrelevant if the deputies possessed probable cause to believe that the vehicle contained evidence of a crime.  *Whren*, 517 U.S. at 811–12, 116 S. Ct. at 1773. The smell of marijuana, furtive movements, indication of a firearm, and $3,500 in cash clearly established probable cause for the deputies to search Williams' vehicle

11

for evidence.  *Rivera*, 595 F.2d at 1099 ("It is well settled that detection of the odor of marijuana furnishes probable cause to search a vehicle.").  Therefore, we agree with that the search fell under the automobile exception to the warrant requirement.

**AFFIRMED.**

12